MARY A. BARNES & others *vs.* THOMAS D. BOARDMAN
& others.

WILLIAM D. BOARDMAN & another *vs.* SAME.

Essex.    March 26, 27, 1890. — October 25, 1890.

Present: FIELD, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Tenants in Common — Assignment of Mortgage — Foreclosure by Cotenant —*
*Contribution — Notice — Laches.*

Land subject to a mortgage was given by a testator to his wife for life, and at her
death to his sons.    The mortgagee entered to foreclose in 1873; and within the
three years necessary to complete the foreclosure, one of the sons, upon receiv-
ing from him an assignment of the mortgage with all rights under the entry,
and from the widow a conveyance of the equity, took possession of the land.
The widow died in 1884, and in 1885 such son sold the land to a *bona fide* pur-
chaser for value.    The assignment and entry were duly recorded, but the other
sons had no actual notice thereof until after their brother's death, in 1887, and
thereupon brought a bill in equity to redeem the mortgage.    *Held,* that the
plaintiffs were entitled to the benefit of the assignment and attempted fore-
closure; that they had not been guilty of laches; and that they might maintain
the bill for their share of the purchase money, if satisfied with such remedy.

TWO BILLS in equity, filed in the Superior Court on No-
vember 14, 1887, to redeem land in Boston from a mortgage.
*Mason*, J. overruled the exceptions of both parties to the report
of a master, to whom the cases were referred, and dismissed the
bills; and both the plaintiffs and the defendants appealed to this
court.    The facts appear in the opinion.

*B. B. Jones*, for the plaintiffs.

*L. S. Dabney*, (*A. D. Bosson* with him,) for the defendants.

DEVENS, J.    Benjamin G. Boardman, senior, at his death in
March, 1858, left a widow, Sarah W. Boardman, and as his sole
heirs at law four sons, Charles W., Edward A., Moses B., and
Benjamin G. Boardman, junior, all of whom had deceased before
the bill was filed.    The plaintiffs, who seek to redeem the land
in question, claimed under the three sons first named; and the
defendants, who oppose such redemption are the administrator
of Benjamin G. Boardman, junior, and Bernard A. Doherty and
James J. Doherty.    By his will, Benjamin G. Boardman, senior,

devised to his wife, Sarah W., the residue of his estate for life only, which residue, including the equity of redemption in certain land concerning which the controversy in the case at bar arises, passed to his sons at her death. The premises were subject to a mortgage, the condition of which had for many years been broken. On December 9, 1873, more than fifteen years after his decease, the original mortgagee made an open and peaceable entry to foreclose the mortgage, under the provisions of the Gen. Sts. c. 140, which entry was duly recorded. Sarah W. Boardman was then alive, and, so far as appears, in possession of the premises. On January 2, 1874, the mortgagee conveyed and assigned his mortgage to Benjamin G. Boardman, junior, together with the debt secured, and all interest of the mortgagee in the premises, including all rights under the entry and possession for foreclosure. This assignment was duly recorded, and under it Benjamin G. Boardman, junior, continued the formal possession taken by the mortgagee for the full term of three years. On April 10, 1876, the widow, Sarah W. Boardman, conveyed to Benjamin G. Boardman, junior, all her interest in any real estate in Boston, but the deed was not recorded by him until April, 1877; this included her life estate in these premises; and from this time he was in actual possession of the premises until he leased the same to the defendants Doherty, in January, 1885. Subsequent to this lease, a conveyance thereof in fee was made to the Dohertys by him, for which they paid one thousand dollars down, and gave a mortgage on the premises for fifteen thousand dollars. The title of the Dohertys was taken by them in good faith, and without notice of any defect other than that which might have been ascertained by inspection of the records of the registry of deeds and of the registry of probate. The property in dispute was, as found by the master, of considerably greater value than the amount of the mortgage bought by Benjamin G. Boardman, junior; but how much greater does not appear. It is further found, that the facts as to the purchase of the mortgage, and the foreclosure of the same, were not communicated to the plaintiffs, or to those whom they represent, and were not known to them until shortly before bringing these suits. There was no evidence of any intentional concealment, on the part of

Benjamin G. Boardman, junior, of the assignment, foreclosure, or conveyance to him, or of any attempt to mislead the parties in interest in regard thereto, or in regard to any material fact, unless it is to be inferred from the absence of evidence that he communicated these facts.

The rule that, when tenants in common are actually in possession, or are entitled to immediate possession, a purchase of an incumbrance on the common property will generally be deemed to have been made for the benefit of all, if they shall consent to pay their proportional shares thereof, and that to this extent a certain fiduciary relation exists between the tenants in common, is one that is sustained by many authorities. *Van Horne* v. *Fonda*, 5 Johns. Ch. 388. *Flagg* v. *Mann*, 2 Sumner, 486. 4 Kent, Com. (13th ed.) 371, and cases cited. 1 Washb. Real Prop. (5th ed.) 430, and cases cited. *Hurley* v. *Hurley*, 148 Mass. 444. It is the contention of the defendant administrator and of the Dohertys, that the rule has here no application, and that those who are only entitled together to an estate in reversion, having no unity of possession, are not within the reason of the rule. We shall not have occasion to consider this question, in view of the relation in which Benjamin G. Boardman, junior, stood to his co-heirs, and to the property in the reversion, to which he was entitled with them by reason of his purchase and ownership of the estate for life when he undertook to complete, and so far as the record is concerned did complete, the foreclosure of the equity of redemption of the mortgage on the premises. While he did not record the conveyance to him by Sarah W. Boardman until April, 1877, it will be observed by the dates heretofore stated that it was some months from the purchase of the life estate included in the conveyance to him of April, 1876, before the three years elapsed after the date of the formal entry by the original mortgagee. He was thus one of the co-reversioners, and the sole owner of the life estate. By seeking to avail himself of the entry made by the original mortgagee to complete the foreclosure of the mortgage, he sought both to destroy the rights of his co-reversioners and the life tenancy which he had acquired by the conveyance of his mother, Sarah W. Boardman.

It is not necessarily the duty of the life tenant to pay off the

incumbrances on the property of which he is life tenant. If he does so voluntarily, or if he is compelled to do so in order to protect his life estate, as the incumbrance is a proper charge alike upon the life estate and the reversion, although in different proportions, it should be deemed that he has done so for the protection of both estates, and each reversioner should be entitled to the benefit of the acquisition on payment of his proper proportion. If, under such circumstances, the reversioner should refuse to pay his proportion, the tenant might well hold it, or any rights which might be acquired thereby, to secure him for the advances which he had made. But it is the right of the reversioner to have the property at the termination of the life estate without any additional burden from the taxes or other annual charges which may have been assessed thereon, or any interest which may have accrued on the incumbrances during the continuance of the life estate. If the life tenant could purchase a mortgage on which he is bound to pay the interest, and then enforce it on his own estate and that of the reversioner, it is obvious that, if the property is worth more than the mortgage, and the life estate is thus of value, injustice would be done the reversioners, who would be deprived of their right to have the interest on the mortgage paid until their estate in reversion became one in possession. Both estates are proportionally liable for the payment of the incumbrance, and, as between themselves, neither has a right to throw the whole burden upon the other. The tenant for life is to contribute in proportion to the benefit he derives from the liquidation of the debt and the consequent cessation of annual payments of interest, taxes, etc. during his life, which of course will depend upon his age and the computation of the value of his life estate. 1 Story, Eq. Jur. § 487. 1 Washb. Real Prop. (5th ed.) 95, 96. *Daviess* v. *Myers*, 13 B. Mon. (Ky.) 511. *Phelan* v. *Boylan*, 25 Wis. 679. "Indeed," says Chancellor Kent, " it is a general principle, pervading the cases, that if a mortgagee, executor, trustee, tenant for life, etc., who have a limited interest, gets an advantage by being in possession, ' or behind the back ' of the party interested in the subject, or by some contrivance in fraud, he shall not retain the same for his own benefit, but hold it in trust." *Holridge* v. *Gillespie*, 2 Johns. Ch. 30, 33.

In the case at bar, it has been found that the property was worth considerably more than the amount of the mortgage. When, before the foreclosure of the mortgage, Benjamin G. Boardman, junior, became the assignee of it, and also the owner of the life estate, he owed to his co-reversioners the duties which arose from the purchase of those two claims upon or titles to the property. Before he could complete a foreclosure which should deprive them of their estate, they were entitled to know from him that it was imperilled by his proceeding, and that he was the life tenant, liable, if he would preserve his tenancy, to contribute to the payment of the mortgage. This resulted from the fact that they were co-reversioners, and, as well as he, were entitled not only to redeem from the mortgage, and thus protect their property, but to have the aid of the life tenant in so doing. As between them and him, it is for him to show that he has given them the opportunity so to do, by informing them of the purchase of the mortgage by himself, and of his ownership of the life estate. This he has failed to do.

Nor can we perceive that the plaintiffs have lost any rights to redeem their proportions of the estate from the mortgage which Benjamin G. Boardman, junior, attempted to foreclose by any laches or lapse of time. Sarah W. Boardman, the original owner of the life estate, did not die until March 21, 1884, and the fact of her death was not communicated to the plaintiffs until some time after. It is found by the master that the co-reversioners of Benjamin G. Boardman, junior, had no actual knowledge until after his death, in 1887, of the breach of the conditions of the mortgage, the entry to foreclose, and the assignment, and until shortly before the bringing of these suits; and that they have been guilty of no laches. This finding is not affected by the fact that there was a record of the entry and of the assignment. They had a right to suppose, as the tenant for life was entitled to possession, they would be called upon and notified if any attempt was made to oust such tenant by which their rights would be affected. As between Benjamin G. Boardman, junior, or his representative, by whom with the Dohertys the suits are now defended, and the plaintiffs, the plaintiffs would be entitled to redeem on payment of their proportion as co-reversioners in the mortgage; and it is found

that the income of the premises since the death of Sarah W. Boardman has been sufficient to pay all proper charges of the mortgagees and the mortgage debt.

There remains the question as to the remedy to which the plaintiffs are entitled. This is deemed by them as of slight practical importance, as, if the title of the Dohertys is held to be good, relief may be afforded them by allowing them to maintain the bills for their share of the proceeds of the sale of the premises for the sum of $16,000, a mortgage for $15,000 of which remains in the hands of the defendant administrator. Nor can the defendants, if the plaintiffs are entitled, as against the estate of Benjamin G. Boardman, junior, to a remedy, object to this. If it shall be found, as the defendants urge, that the prayers of the bills are not adapted to this remedy, and it shall be so considered when the final decree is to be framed, there can be no reason why the plaintiffs should not be permitted to amend on proper terms. To the Dohertys, who are conceded to have purchased in good faith, and for full and valuable consideration, with no knowledge except such as they may be properly charged with, and as could be derived from inspection of the records of the registry of deeds or of the registry of probate, it may make a serious difference whether the remedy of the plaintiffs shall be upon the estate now in their possession, or through the mortgage they have given for the payment of the purchase money. As the plaintiffs are satisfied with the relief afforded in the latter method, and as the rights of purchasers in good faith are thus protected, the decree may be so framed.

*Decree for the plaintiffs.*