EISENBERG, RESPONDENT, *v.* GOLDSMITH, EXECUTOR, ETC., APPELLANT.

(No. 2,911.)

(Submitted January 30, 1911. Decided February 23, 1911.)

[113 Pac. 1127.]

*Trusts—Constructive and Resulting Trusts—Definitions—Evidence—Insufficiency—Burden of Proof—Mining Partnership—Fiduciary Relations—Borrower and Lender.*

Resulting Trust—How Created.
  1.  A resulting trust arises by operation of law, from the fact that the consideration for the purchase of property was paid by, or on behalf of, one person, and the title thereto taken in the name of another.

Same—Creation—Evidence—Insufficiency.
  2.  Where the evidence showed that plaintiff, in an action to have defendant declared a trustee of an interest in mining property for the former's use and benefit, did not pay any part of the purchase price. thereof, or that anyone else paid it for him, or that defendant, in paying the whole of the purchase price, advanced plaintiff's portion as a loan to the latter, the fundamental element necessary

to create a resulting trust, i. e., payment by or for plaintiff, was absent.

Same—Burden of Proof.

3. Plaintiff in an action to establish a resulting trust in real property in opposition to the written title, has the burden of proving his claim by clear and satisfactory evidence, especially where there has been great delay in asserting it.

Same—Time of Payment of Consideration.

4. To create a resulting trust, the payment of the money as the consideration for the purchase of the property must have been made at the time or before the legal title passed to the party sought to be charged in the trust capacity.

Same—Loan by Defendant to Plaintiff—Evidence—Insufficiency.

5. Where plaintiff did not know of the purchase of mining property by defendant until long after it had been made, and the evidence disclosed that he had not previously made any arrangements with defendant whereby the latter was to advance his (plaintiff's) proportion of the purchase price and did not intend to buy or assist in buying the property, his contention that when defendant paid the full purchase price he in so doing made a loan to plaintiff in an amount sufficient to pay the latter's share thereof, and should therefore be held a trustee of a resulting trust to the extent, of such share, was without merit.

Constructive Trust—How Created.

6. A constructive trust is created by operation of law, upon breach of a fiduciary relation by the person sought to be held; its basis is fraud, actual or constructive.

Same—Partnerships—Cotenants—Fiduciary Relations.

7. The rule that a partner who, in the absence of an agreement to the contrary, purchases an adverse interest in firm property, or renews in his own name a lease upon the premises in or upon which the firm transacts its business, will be held a trustee ex maleficio for the firm to the extent of the interest so acquired, applies to cotenants and probably to mining partners.

Same—Mining Partnerships—Evidence—Insufficiency.

8. Evidence held not to show that the relationship of mining partners existed between plaintiff and defendant at the time the latter purchased mining property in his own name, in violation of the alleged fiduciary relationship of the parties; and a claim that on that account a decree declaring defendant a trustee ex maleficio of a certain interest in the property would have been justified, was without foundation.

Same—Case Stated—Evidence—Insufficiency.

9. Defendant had a lease and bond upon certain mining property. In company with plaintiff he commenced active mining operations under an agreement, one of the terms of which was that plaintiff might acquire a one-eighth interest in the lease and bond upon repayment to defendant of one-eighth of the operating expenses advanced to him by the latter. Repayment of this amount was never made. Defendant, exercising his option under the bond, purchased the property in his own name, using his individual and not common funds. Neither plaintiff nor anyone in his behalf furnished any part of the purchase price. Defendant thereafter sold the property, and plaintiff brought suit to have the former declared trustee of a one-eighth interest for his use and benefit. Held, that the evidence did not show either a resulting or constructive trust as against defendant.

*Appeal from District Court, Silver Bow County; John B. Mc-Clernan, Judge.*

ACTION by Maurice Eisenberg against A. W. Goldsmith, executor of the last will and testament of H. L. Frank, deceased, to have defendant declared a trustee of an undivided one-eighth interest in certain mining property, in favor of plaintiff and for an accounting. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed and remanded.

*Mr. C. R. Leonard,* and *Messrs. Gunn & Hall,* submitted a brief and reply brief in behalf of Appellant. *Mr. L. O. Evans* and *Mr. C. F. Kelley,* of counsel. Oral argument by *Mr. M. S. Gunn* and *Mr. Evans.*

It is claimed by respondent, first, that there is a constructive trust, and second, that there is a resulting trust. The claim of a constructive trust is based upon the assumption that the plaintiff and Frank were mining partners. It is argued that this relation prevented Frank from acquiring the property, except for the use and benefit of the plaintiff to the extent of a one-eighth interest. The assumption that the plaintiff and Frank were mining partners is wholly unwarranted. The relation between the parties was created by contract, and neither the contract, nor what was done under the contract, made them mining partners. (Revised Codes, sec. 5535.) There is not a single element of a mining partnership, or of a general partnership. If, however, we assume that there was a mining partnership, such relationship did not prohibit Frank from purchasing the property for himself. (*Bissell* v. *Foss,* 114 U. S. 252, 5 Sup. Ct. 851, 29 L. Ed. 126; *Harris* v. *Lloyd,* 11 Mont. 390, 28 Am. St. Rep. 475, 28 Pac. 736; 2 Lindley on Mines, sec. 800; *First Nat. Bank* v. *Bissell,* 4 Fed. 694, 2 McCrary, 73, 11 Morr. Min. Rep. 546.)

As a mining partnership can only be created for the purpose of operating mining property, the purchase and sale of mining property is not within the scope of such a partnership. In the

case of *Merk* v̇. *Bowery Min. Co.,* 31 Mont. 298, 78 Pac. 519, it was held that options to purchase and a lease, although contained in the same paper, are separate and distinct. If the plaintiff and Frank had been jointly interested in the lease, and had jointly engaged in the operation of the property, the purchase of the property, pursuant to the option, would have been entirely without the scope of the partnership. There was no written contract to the effect that the parties would jointly purchase; but if there had been such a contract, and it had been provided that the title should be taken in the name of Frank, in view of the fact that the plaintiff did not contribute to the purchase, he would not, even under those circumstances, have an interest in the property. This is directly decided in the case of *Norton* v. *Brink,* 75 Neb. 566, 106 N. W. 668, 110 N. W. 669, 7 L. R. A., n. s., 945. (See, also, *Butts* v. *Cooper,* 152 Ala. 375, 44 South. 617; *Smith* v. *Burnham,* 3 Sum. 435, Fed. Cas. No. 13,019.) As there is no claim, or basis for a claim, that Frank was guilty of any fraud or bad faith in taking title in his own name, there can be no foundation for the contention that there is a constructive trust. The case of *Largey* v. *Leggat,* 30 Mont. 148, 75 Pac. 950, is conclusive of this proposition.

Is there a resulting trust? It is claimed in behalf of plaintiff that, by virtue of section 4538 of the Revised Codes, there is a resulting trust. The case of *Lynch* v. *Herrig,* 32 Mont. 267, 80 Pac. 240, is a sufficient answer to this contention. (See, also, *Ducie* v. *Ford,* 138 U. S. 587, 11 Sup. Ct. 417, 34 L. Ed. 1091; *Oden* v. *Lockwood,* 136 Ala. 514, 33 South. 895; *Mitchell* v. *Wright,* 155 Ala. 17, 46 South. 473.) The cases of *Largey* v. *Leggat* and *Lynch* v. *Herrig, supra,* leave no room for any claim that the payment of the purchase price by one party under an agreement that the payment is an advance or loan to another gives rise to a resulting trust. (See, also, *Steere* v. *Steere,* 5 Johns. Ch. (N. Y.) 1; *Bland* v. *Talley,* 50 Ark. 71, 6 S. W. 234; *Olcott* v. *Bynum,* 17 Wall. 44, 21 L. Ed. 570; *Botsford* v. *Burr,* 2 Johns. Ch. 405; *Doran* v. *Cohen,* 147 Mass. 342, 17 N. E. 645; *Cushing* v. *Houston,* 53 Wash. 379, 102 Pac. 29; *Butts* v. *Cooper*

(La.), 44 South. 616, *Norton* v. *Brink,* 75 Neb. 566, 106 N. W. 668, 110 N. W. 669, 7 L. R. A., n. s., 945; *Ostheimer* v. *Single,* 73 N. J. Eq. 539, 68 Atl. 231.)

The right of respondent, if any, is barred by laches. (*Sullivan* v. *Portland etc. Ry. Co.,* 94 U. S. 806, 24 L. Ed. 324; *Johnston* v. *Mining Co.,* 148 U. S. 370, 13 Sup. Ct. 585, 37 L. Ed. 480, 17 Morr. Min. Rep. 554; *Horsky* v. *Moran,* 21 Mont. 348, 53 Pac. 1064.) Where a party has not been diligent in asserting a claim to property and there has been a change in the relation of the parties with reference to the property, a court of equity will refuse relief. (*Wetzel* v. *Transfer Company,* 65 Fed. 23, 12 C. C. A. 490; 1 Pomeroy's Equitable Remedies, p. 22; *Bateman* v. *Rietler,* 19 Colo. 547, 36 Pac. 549.)

In behalf of Respondent, there was a brief by *Messrs. Walsh & Nolan;* oral argument by *Mr. T. J. Walsh.*

The legal rights of the parties will be, perhaps, more clearly apprehended by considering the rights and relations of two parties who have a lease and bond upon a piece of property. One of them buys the property and takes a deed in his own name. Can he hold it as against his partner? The answer to this question is made clear by the authorities. It makes no difference whether the original lease and bond is taken in the name of both parties interested, or, as is not infrequently the case in partnership transactions, in the name of one only; any purchase made by either party is for the benefit of both. Even if it is a simple lease with no right of purchase, one of the two jointly interested or working the property on joint account cannot take a renewal of the old lease or take a new lease on the same or on different terms, or acquire the fee which would simply be a lease for an indefinite term, in his own right; but in every such case the other party becomes entitled, on payment of the amount chargeable against his interest, to a conveyance from the joint adventurer purchasing. These principles are elaborated, and their application to a multitude of cases varying in their facts shown, in *Mitchell* v. *Reed,* 61 N.

Y. 123, 19 Am. Rep. 252. To a considerable extent the conclusions of the courts are founded upon the idea that the hope or expectancy of a renewal of the lease is an asset belonging to all parties interested in it, and that no one of them can destroy this by taking a renewal or a new lease in his own name. (*Robinson* v. *Jewett*, 116 N. Y. 40, 22 N. E. 224; *Johnson's Appeal*, 115 Pa. 129, 2 Am. St. Rep. 539, 8 Atl. 36.) Another very plain reason is that a high degree of good faith is required between parties sustaining such relations to each other, and a violation of it, by secretly obtaining a new interest in his own right, by any one of them will not be tolerated by the law. The general subject here considered is reviewed in an elaborate note to *Keech* v. *Sandford*, 1 White & Tudor's Lead. Cas. Eq. 48–73. (See, also, *Lacey* v. *Hall*, 1 Wright, 360; *Flagg* v. *Mann*, 2 Sum. 486, 9 Fed. Cas. 202, No. 4847; *Van Horne* v. *Fonda*, 5 Johns. Ch. 388.)

This action was not brought upon any theory that Frank, when he bought, intended to pay one-eighth of the purchase money, and did pay it for Eisenberg, but upon the theory of a constructive trust arising from the confidential character of the relations existing between him and the plaintiff by reason of their being joint adventurers in the development, and looking to the acquisition of this mining property; that the law conclusively presumes, by reason of those relations, that he bought in the interest of both and paid Eisenberg's share for him, without regard to his actual intention at the time.

Two contentions are made by the appellant against the law of the case as claimed by respondent. In the first place a remark in the opinion in the case of *Bissell* v. *Foss*, 114 U. S. 252, 5 Sup. Ct. 851, 29 L. Ed. 126, is seized upon to support the contention that no constructive trust would arise; that is, the purchase would not be deemed to have been made in the interest of Eisenberg, because Frank could not sue and recover from Eisenberg the amount assignable to his share of the property. But that argument ignores the nature of a constructive trust altogether. If Eisenberg had authorized Frank to buy for him,

and Frank had agreed to do so and to advance the purchase money in his interest, and thereupon had made the purchase, he would have made the payment for Eisenberg and a resulting trust would have arisen, under section 4538, Revised Codes. In that case Frank would have agreed in advance to loan the purchase money to Eisenberg, and carrying out that agreement he would pay Eisenberg's money. A constructive trust proceeds upon no idea of a previous arrangement between the parties, whereby one agrees to buy for the other or advances money under such express or implied agreement as that he can turn around and take judgment for the amount of the advances against the other. In no case, where a constructive trust arises between parties, is the party buying in a situation where he can turn around and sue the other party for his share of the purchase money, and recover judgment. The case of *Bissell* v. *Foss* presented the simple feature of whether one mining partner may buy out in his own interest the share of another partner. The court holds he may, and shows that that is quite a different question, and is governed by different rules, from the purchase of an interest held or claimed by one outside the joint adventurers. It is shown that though a tenant in common may not buy in for his exclusive use, an outstanding title or encumbrance, he may buy the interest of another tenant in common. It was accordingly held that the relations between the parties did not prevent one mining partner from buying in his own right the interest of another mining partner, and that consequently no trust arose by reason of the relations of the parties independent of the contract which Bissell asserted, but which the court found did not exist.

We are not contending that the respondent had any contract with Frank by which the latter bought for both. We ask a decree upon the ground of the relations existing between them— as evidenced by their contract and as shown by the evidence— by reason of which neither could secretly buy the outstanding title and hold it against the other. (*Harris* v. *Lloyd*, 11 Mont. 390, 28 Am. St. Rep. 1475, 28 Pac. 736.) This leads us to the

second claim made by appellant,—namely, that there is no relation of trust and confidence between mining partners. The authorities are to the contrary, as is plain reason. (2 Lindley on Mines, 800.) The proposition here combated is supposed to rest upon the case of *Bissell* v. *Foss, supra,* but the declaration in that case is not that there is no relation of trust and confidence between mining partners at all, but, "There is no relation of trust or confidence between mining partners which is violated by the sale and assignment by one partner of his share in the property and business to a stranger or to one of his associates, without consulting the other."

The appellant insists that the respondent should be denied relief because of his laches. That claim assumes that respondent did have a right; that the facts would have entitled him to relief had he commenced his action a year earlier. It is conceded that the statute of limitations has not run; therefore some good reason must affirmatively appear to justify the court in denying to a plaintiff what is confessedly his. (*Brun* v. *Mann,* 151 Fed. 145, 80 C. C. A. 513, 12 L. R. A., n. s., 154; *Bissell* v. *Knapp,* 155 Fed. 809.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On October 31, 1899, H. L. Frank obtained a lease and bond for one year from James A. Murray and John C. Carroll upon the East Gem quartz lode mining claim, in Silver Bow county. Under the terms of the lease, Frank was let into possession of the property and permitted to carry on mining operations upon the payment of a royalty of twenty-five per cent of the value of the ores extracted. Under the terms of the bond, Frank was given an option to purchase the property at any time during the year upon the payment of $50,000, one-half to Murray and one-half to Carroll. Frank took possession of the property and commenced active mining operations, and sometime during the year he and Eisenberg entered into an agreement by which Eisenberg obtained a one-fourth interest in the mining opera-

tions. By some arrangement Frank secured an extension of the lease and bond, from October 30, 1900, to May 1, 1901, at least. On December 22, 1900, Frank and Eisenberg modified their previous agreement and reduced their contract to writing. This contract recites that Frank had a lease and bond upon the East Gem claim, and a lease and bond upon other property which does not enter into this controversy at all; that he has theretofore advanced certain money for Eisenberg, and will thereafter advance for Eisenberg moneys sufficient to pay one-eighth of the cost of operating the property. The contracting parts of the agreement are: (1) That when Frank is fully reimbursed for all moneys advanced to Eisenberg, either from (a) the profits of the mining operations, or (b) profits arising from "any purchases made thereunder," or (c) the direct payment by Eisenberg, then Frank will transfer, assign, and set over to Eisenberg an undivided one-eighth interest in and to the lease and bond. (2) If no money should be realized from the operations of the lease and bond or from any purchases made thereunder, then all moneys advanced by Frank to Eisenberg are to be treated as loans. (3) Eisenberg shall have "no interest in and to said leases and bonds until repayment of said money is made in the manner hereinbefore specified." (4) "It is further understood and agreed that the party of the first part [Frank] is under no obligation to advance for the party of the second part [Eisenberg] any part of the purchase price mentioned in said leases and bonds, but that he only agrees to advance for the party of the second part one-eighth (⅛) of all the expense which may be required to keep alive the said leases and bonds and prosecute the mining work thereunder."

On February 7, 1900, Eisenberg paid to Frank $500; on August 20 of the same year, a like amount; and on May 6, 1901, a like amount. On April 30, 1901, Frank purchased from Murray one-half of Murray's one-half interest in the East Gem claim, paying therefor $12,500, and received a deed on August 1, 1901. On October 30 Frank purchased Carroll's one-half interest for $25,000. During 1900, 1901, and the greater por-

tion of 1902, active mining operations were carried on. About September, 1902, the operations were practically suspended, and only a sufficient number of men to keep the water from the mine and do some repairing was employed, and later these men were relieved and a watchman for the property only employed. On January 19, 1905, Frank wrote to Eisenberg, who was then in the east, and with the letter transmitted a statement of account showing that Eisenberg owed him $11,746.63. With reference to the account Frank wrote: ''Am inclosing you statement of your indebtedness to me, amounting to $11,746.63, for money advanced by me to you under the Gem lease. * * * This covers the expense work chargeable to an eighth interest in the lease per our agreement, and, as no profit was realized by the operation and your interest in the property failed, the amount advanced by me became, under the terms of the agreement, simply a loan for which I now ask reimbursement.'' On November 15, 1905, Frank entered into an agreement for the sale of the East Gem claim to Joseph A. Coram, for $112,500. On December 20, 1905, this suit was commenced to have Frank declared a trustee of an undivided one-eighth interest in the property for the use and benefit of Eisenberg, and for an accounting of the proceeds of the mining operations. Some time after the suit was commenced, Frank died, and the executor of his will was substituted as defendant in his stead. The cause was tried to the court without a jury, findings of fact and conclusions of law were made in favor of plaintiff's contention, and a decree rendered and entered adjudging defendant to be a trustee for the plaintiff of an undivided one-eighth interest in the property, and ordering an accounting. From the judgment and an order denying a new trial, this defendant has appealed.

There is not any contention made that this is a suit upon the contract between Frank and Eisenberg dated December 22, 1900. From the findings made it appears that the trial court treated it as a suit to enforce a resulting trust. In their brief counsel for plaintiff say, however, that the theory upon which the complaint proceeds is that a constructive trust was created

in favor of Eisenberg, and that the suit is to enforce that trust. However, as this is a suit in equity and is now before us for determination, it is not very material which of these two views be held to be the correct one; for if the evidence shows clearly a resulting trust in favor of plaintiff, and it was necessary to sustain the decree for us to do so, we would treat the complaint as amended to meet the proof.

1. Does the evidence show a resulting trust in favor of plaintiff? We think not. The record of the transactions between Frank and Eisenberg with relation to this property is a medley of contradictions. The contract between them specifically provides that Frank should not be under any obligation to advance for Eisenberg any part of the purchase price, and there is not any direct evidence that he did so. However, there is correspondence in the record, which passed between them, and evidence of a course of conduct on Frank's part, inconsistent with any other theory than that Frank recognized that Eisenberg had some sort of interest in the operations of the property up to January, 1905. Section 4538 of the Revised Codes provides as follows: "When a transfer of real property is made to one person, and the consideration thereof is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." This was section 1312 of the Civil Code of 1895, and was considered by this court in *Lynch* v. *Herrig*, 32 Mont. 267, 80 Pac. 240, and some questions pertinent to this inquiry were determined: (1) That the statute above "is but declaratory of the common law." (2) "That, in order to raise a resulting trust, the payment of the money as the consideration for the purchase of the property must be made at the time or before the legal title to the property passes to the party to be charged in the trust capacity, and that any moneys paid or contracts or agreements made thereafter are not sufficient to raise a resulting trust." (3) "The statute of frauds has nothing to do with the case." (4) "This resulting trust does not arise from, or depend on, a contract or agreement between the parties. It is independent of any contract and arises by opera-

tion of law from the fact that the consideration for the purchase of the property was paid by one person, and the title to the property purchased taken in the name of another." (5.) "While the agreements or contracts between parties do not of themselves form the basis of any relief as to the trust, they may be important for consideration in assisting to establish the fact of the ownership of the money and how it was invested." But the one fundamental idea running through the statute is that the money paid was in fact the money of the person who claims the existence and benefit of the trust. It is immaterial whether the payment was made by him personally or for him by another; but in either instance the payment must have been made with his money.

Tested by these rules, the evidence fails altogether to show a resulting trust. Frank purchased the property from Murray and Carroll and paid for it. Eisenberg did not pay any part of the purchase price himself. In fact, he alleges in his complaint: "That defendant never at any time advised the plaintiff that he was about to purchase the said claim under the said lease and bond, or otherwise, and never at any time called upon the plaintiff to contribute his share of the purchase price of the same, but completed the purchase without consulting the plaintiff." From this we are fully justified in saying that Eisenberg did not even know that the property had been purchased until some considerable time after the purchases were made. Frank did not have in his possession any money belonging to Eisenberg, and was not furnished any money to make the purchase by Eisenberg or by anyone for him.

Plaintiff insists that, while primarily his suit was not prosecuted upon the theory of a resulting trust, the evidence is sufficient to sustain it upon that theory, and in support of this urges the rule that, "where the purchase money was in fact paid by the grantee, but merely as a loan to the person seeking to enforce the resulting trust, who was liable to the grantee for the repayment of the money so advanced, * * * this is treated as a constructive payment by the plaintiff, and is sufficient to create

a resulting trust in his favor.'' (15 Am. & Eng. Ency. of Law, 2d ed., 1147.) It is insisted that, in making payments for this property, Frank advanced one-eighth of the purchase price as a loan to Eisenberg; and, if this be true, then Frank held the title to the property, to the extent of a one-eighth interest, as trustee of a resulting trust in favor of Eisenberg. As in every instance where one person asserts a claim to an estate in opposition to the written title, so in this one must he assume and maintain the burden of proof, and the evidence in support of his claim must be clear, full, and satisfactory; that is to say, there must be sufficient positive facts proven to take the case out of the realm of conjecture or speculation, and this is especially true where there has been great delay in asserting the claim. (*Green* v. *Dietrich,* 114 Ill. 636, 3 N. E. 800; *Lehman* v. *Lewis,* 62 Ala. 129; *Donaghe* v. *Tams,* 81 Va. 132; *Dudley* v. *Bachelder,* 53 Me. 403; *Laughlin* v. *Mitchell* (C. C.), 14 Fed. 382; *Millard* v. *Hathaway,* 27 Cal. 119; *Parker* v. *Snyder,* 31 N. J. Eq. 164; *Cushing* v. *Heuston,* 53 Wash. 379, 102 Pac. 29.)

If Frank loaned to Eisenberg one-eighth of the purchase price, he did so at the time the purchases were made or prior thereto; for it is a cardinal rule relating to resulting trusts that ''the trust results from the original transaction at the time it takes place, and at no other time; and it is founded on the actual payment of money and on no other ground.'' (*Botsford* v. *Burr,* 2 Johns. Ch. 405; *Woodside* v. *Hewel,* 109 Cal. 481, 42 Pac. 152; *Levy* v. *Ryland* (Nev.), 109 Pac. 905.) But the evidence in this record demonstrates that Eisenberg did not know of the purchases made until some time after they were made; that he had not previously arranged with Frank to borrow money to purchase the property, and, so far as this record discloses, he did not intend to purchase or assist in purchasing the property at the time the purchases were made. Frank could not loan money to Eisenberg and thereby make Eisenberg his debtor without Eisenberg's consent, and it will not be presumed that he intended or attempted to do so. (*Frederick* v. *Haas,* 5 Nev. 389.) If Frank advanced one-eighth of the purchase price as a loan to Eisenberg, it follows that Eisenberg immediately became indebted to Frank for that

amount—indebted in the sense that Frank could enforce repayment by an action at law. Let us suppose that immediately after making payment of the purchase price Frank had commenced an action against Eisenberg to enforce repayment of one-eighth of the purchase price. Upon what theory could he have urged his action? Eisenberg did not authorize him to advance money to purchase the property and might have successfully defended upon that theory alone. To constitute a loan, there must of necessity be a borrower and a lender, and the transaction must have every element of a contract. (Revised Codes, sec. 5206.) But Frank did not agree to loan Eisenberg one-eighth of the purchase price, and Eisenberg did not ask for such a loan. There was not any meeting of minds, and therefore not a contract. It will not do to say that Frank advanced the money for Eisenberg, the tender of the loan to be thereafter accepted by Eisenberg if he elected to accept, for, as we have already said, the law requires that, to constitute a resulting trust, the money must have been Eisenberg's at the time of the purchases—the loan, if any, must have been complete at that time. If Frank intended that one-eighth of the purchase price should constitute a loan to Eisenberg, there should be some evidence of that intention, and there is not any. There was not any charge made to Eisenberg upon Frank's books, and in the statement of account which Frank rendered to Eisenberg in January, 1905, there is not any charge for any portion of the purchase price, but only a charge for one-eighth of the operating expenses.

These suggestions are offered to show that, while Eisenberg had the burden of showing that one-eighth of the purchase price was paid with money loaned to him by Frank, the evidence in this record is not only not clear and convincing, but is not entitled to any serious consideration. If plaintiff had relied exclusively upon a resulting trust, he would have failed signally.

2. Is the evidence sufficient to show a constructive trust created in favor of Eisenberg? Section 4537, Revised Codes, provides: "No trust in relation to real property is valid unless created or declared: (1) By a written instrument, subscribed by the trustee, or by his agent thereto authorized in writing; (2) by the

instrument under which the trustee claims the estate affected; or (3) by operation of law."

A constructive trust is one created by operation of law. There is not any question of contract involved. In Pomeroy's Equity Jurisprudence, section 1044, it is well said: "Constructive trusts include all those instances in which a trust is raised by the doctrines of equity for the purpose of working out justice in the most efficient manner, where there is no intention of the parties to create such a relation, and in most cases contrary to the intention of the one holding the legal title, and where there is no express or implied, written or verbal, declaration of the trust. They arise when the legal title to property is obtained by a person in violation, express or implied, of some duty owed to the one who is equitably entitled, and when the property thus obtained is held in hostility to his beneficial rights of ownership." "The basis of a constructive trust is fraud, actual or constructive." (15 Am. & Eng. Ency. of Law, 2d ed., 1185; *Kayser* v. *Maugham,* 8 Colo. 232, 6 Pac. 803; *Sanguinetti* v. *Rossen,* 12 Cal. App. 623, 107 Pac. 560.)

The contention here made is that, when Frank purchased the property outright from Murray and Carroll, he thereby secured title adverse to that of Eisenberg which should inure to the benefit of both Eisenberg and Frank, by reason of the fiduciary relationship existing at the time the purchases were made; and it is insisted that the relationship of trust and confidence arose from the fact that Eisenberg and Frank were mining partners in the operations of the East Gem claim. A mining partnership is defined by section 5535 of the Revised Codes as follows: "A mining partnership exists when two or more persons who own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom, actually engage in working the same." Section 5536 provides: "An express agreement to become partners or to share the profits and losses of mining, is not necessary to the formation and existence of a mining partnership. The relation arises from the ownership of shares or interests in the mine and working the same for the purpose of extracting the minerals therefrom."

Viewed in the light most favorable to Eisenberg, the writing of December 22, 1900, is a contract for an interest in the lease and bond on the East Gem claim. It does not convey any present interest. This it declares in express terms; but it gave him the right to acquire an interest upon the happening of a contingency, *viz.*, the repayment to Frank of all of one-eighth of the expenses of operations under the lease. In other words, the reimbursement of Frank was a condition precedent to Eisenberg's obtaining any interest in the lease and bond; and, since repayment to Frank was not made prior to the purchases, Eisenberg did not have any share or interest in the claim at or prior to the time the purchases were made, and one of the essential elements of a mining partnership was lacking. (*Anaconda Copper Min. Co.* v. *Butte & Boston Min. Co.*, 17 Mont. 519, 43 Pac. 924.) The only interest which Frank had in the property prior to the purchases was evidenced by the lease and bond, and that Eisenberg did not have any interest whatever is clearly evidenced by the contract, for it recites that he shall have no interest in and to said leases and bonds until repayment shall be made to Frank of all moneys advanced by him to Eisenberg. There is no evidence that this provision of the contract was ever modified, and any declaration made by Frank must be construed with reference to this provision of the contract, and not as tending to contradict it.

But it is not very material whether Frank and Eisenberg were trading partners, tenants in common, mining partners, or just what their actual relationship was in the mining operations. It is quite apparent that they had some sort of common interest. Was it such a common interest as presupposed a relationship of trust and confidence which in equity precluded Frank from purchasing an adverse outstanding title in his own name and for his exclusive use and benefit? In the absence of any agreement to the contrary, it may be said to be a general rule that the relationship of general partners is such that, if one partner purchases an adverse interest in firm property or renews in his own name a lease upon the premises in or upon which the firm transacts its business, he will be held to be a trustee *ex maleficio* for the firm

to the extent of the interest so acquired. (1 Perry on Trusts, sec. 206; 22 Am. & Eng. Ency. of Law, 2d ed., 117; 30 Cyc. 458.) The American authorities are cited at length in these texts and are too numerous for further reference here. This rule has prevailed in England for more than a century. (*Featherstonehaugh* v. *Fenwick*, 17 Ves. Jr. 298.) The same rule applies to cotenants (*Harras* v. *Harras* (Wash.), 110 Pac. 1085; 17 Am. & Eng. Ency. of Law, 674; *Barnes* v. *Boardman*, 152 Mass. 391, 25 N. E. 623, 9 L. R. A. 571), and probably also to mining partners (*Settembre* v. *Putnam*, 30 Cal. 490; *Continental Divide M. I. Co.* v. *Bliley*, 23 Colo. 160, 46 Pac. 633; 27 Cyc. 760). We do not think that *Bissell* v. *Foss*, 114 U. S. 252, 5 Sup. Ct. 851, 29 L. Ed. 126, or *Harris* v. *Lloyd*, 11 Mont. 390, 28 Am. St. Rep. 475, 28 Pac. 736, suggests a different view.

"The rule is well settled that a party will not be permitted to purchase an interest in property and hold it for his own benefit where he has a duty to perform in relation thereto which is inconsistent with his character as a purchaser on his own account." (*Stettnische* v. *Lamb*, 18 Neb. 619, 26 N. W. 374; 15 Am. & Eng. Ency. of Law, 2d ed., 1197.) "A very common form of constructive trust arises where a person in a fiduciary relation purchases an adverse title to the trust property which his duties as a fiduciary required him to purchase for his *cestui que trust*." (*Jenkins* v. *Frink*, 30 Cal. 586, 89 Am. Dec. 134.) Stated somewhat more simply: To give rise to a constructive trust, there must be a breach cf trust on the part of the person who is sought to be held; and the reason for this, apparently, is that the person claiming the existence of the trust, relying upon the intimate relationship, has a right to presume that if the other makes a purchase of property it will be for the common benefit of both. Certainly, then, if Eisenberg did not intend or expect that Frank would purchase the property and hold it for their common benefit, he was not deceived by the purchases when made by Frank individually. He could not justly repose any confidence in Frank that Frank would purchase for the common interest of both, and Frank's purchases for himself individually could not create a breach of trust.

As we have heretofore said, a constructive trust rests upon fraud, actual or constructive. (1 Perry on Trusts, sec. 166.) In 1 Story's Equity Jurisprudence, section 187, it is said: "Fraud, indeed, in the sense of a court of equity, properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another."

If, then, Frank is to be held a trustee *ex maleficio,* it is because in purchasing the legal title to the East Gem claim he violated a duty which he owed to Eisenberg or breached a trust which Eisenberg had justly reposed in him; or, stated in another way: If it appears that Frank owed to Eisenberg the duty to purchase the Murray and Carroll interests for both, then in purchasing them in his own name and for his own exclusive use and benefit he violated that duty and should be held accountable as a constructive trustee; but if, upon the other hand, it appears that Frank did not owe any duty to Eisenberg to purchase the property at all, or, if he purchased it, to purchase for Eisenberg's use and benefit as well as his own, then in purchasing in his own name and for his exclusive use he did not violate any duty and cannot be declared a trustee of the interest so acquired. At the time the written agreement of December 22, 1900, was executed, Frank and Eisenberg had some common interest in working the East Gem claim; but, so far as this record discloses, they dealt with one another upon an equal footing and at arm's-length. In other words, there is not any complaint made by Eisenberg that coercion was exercised or any unfair advantage taken by Frank in securing his consent to the terms which the contract imposed. Frank had a lease upon the property and an option to purchase it. He might have permitted the lease to expire and the option to lapse. He was not under any obligation to secure a renewal of the lease or an extension of the option contract. Suppose that Frank had not taken any steps up to May 1, 1901. The lease would then have expired, and the option would have been withdrawn. Could Eisenberg complain? Certainly not, even though the mining operations had been carried

on at a loss, and the result would be that the money which he had advanced could not be recovered. He took that chance, as everyone does who devotes his means to mining operations in an attempt to develop paying properties.

But further than this: Eisenberg could not have believed that if Frank purchased the property he would do so for the common interest of both. Frank did not use common funds to make the purchases. He used his individual money. Can it be said that Frank intended to advance one-eighth of the purchase price for Eisenberg, or that Eisenberg could have expected him to do so? They solemnly agreed that Frank should not be under any obligation whatever to make such advances. If that provision of the contract has any meaning at all, it is that Frank did not intend to advance any part of the purchase price for Eisenberg, and that Eisenberg so understood it. For all that appears from this record, Eisenberg was content to allow the lease and option to lapse. His contract to secure an interest in the lease and option implies clearly that he was to reimburse Frank during the life of the lease; otherwise he could not secure any interest; and, as he did not do so, his contingent interest would have ceased with the lapse of the lease and bond. Under these circumstances, it appears to us altogether inequitable to say that Frank was under any obligation, moral or legal, to advance one-eighth of the purchase price for Eisenberg's benefit. They made their own contract, were apparently satisfied with it, and this court is not warranted in making a new agreement for them. This provision of the contract clearly negatives any idea that Frank should advance any part of the purchase price for Eisenberg and is altogether inconsistent with the idea that fraud would result if he did not do so. It is not only consistent with the idea that Frank reserved the right to purchase the property for himself alone if Eisenberg did not fully reimburse him and thereby secure an interest in the lease, and that Eisenberg so understood it, but is inconsistent with any other theory. It cannot be said that Frank breached a duty which he owed to Eisenberg because of their relationship, in the face of a valid contract which re-

lieved him of a duty which might otherwise have been imposed upon him.

The declarations against interest, which it is said Frank made from time to time, may be reconciled to the idea that Frank treated Eisenberg's interest as extending to the working of the property and no further.

We have found it impossible to reconcile all the apparent contradictions appearing in the record. The result we have reached seems to come as near to it as possible. We think the evidence presented is altogether insufficient to establish either a resulting or constructive trust, and these are the only theories urged in support of the decree. What we have said is to be construed with reference to the record now before us. An accounting of the mining operations carried on by Frank upon the East Gem claim may or may not change the relationship of the parties.

In so far as the judgment decrees the defendant to be a trustee of an undivided one-eighth interest in and to the East Gem claim in favor of the plaintiff, it is reversed, and the order refusing a new trial of that issue is also reversed, and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.