MacGINNISS REALTY CO., Appellant, *v.* HINDERAGER, Respondent.

(No. 4,688.)

(Submitted March 14, 1922. Decided April 17, 1922.)

[206 Pac. 436.]

*Real Property — Quieting Title — Execution Sales — Title — Caveat Emptor—Constructive and Resulting Trusts—Burden of Proof.*

Real Property—Execution Sale—Title of Purchaser Relates Back to Time of Levy of Attachment.

1. The title of the purchaser of attached realty at execution sale relates back to the time of the levy of the writ of attachment, hence the rights of one claiming to have been its owner when it was sold must be determined with reference to the condition of the title at the time the levy was made.

Same—Execution Sale—Title of Purchaser—*Caveat Emptor.*

2. The purchaser of land at execution sale acquires all the right, title and interest of the judgment debtor therein, subject, however, to all the rights and equities of third persons which are capable of being enforced against the judgment debtor, the rule of *caveat emptor* applying to execution sales.

Same—Title of Purchaser—Evidence—Insufficiency.

3. In an action to quiet title to land sold on execution, evidence *held* to show that when the president of plaintiff realty company bought it, taking record title in himself, he was not acting for the company but made the purchase in his own behalf and owned it at the time levy of attachment was made thereon.

Same—Resulting Trust—Consideration—Time of Payment.

4. To raise a resulting trust in land the consideration for its purchase must have been paid at the time or before the legal title to it passed to the party sought to be charged in the trust capacity, payments made thereafter being insufficient for that purpose.

Same—Constructive Trust—How Created.

5. A constructive trust is created by operation of law, upon breach of a fiduciary relation by the person sought to be held, its basis being fraud, actual or constructive.

Same—Claim in Opposition to Written Title—Burden of Proof.

6. Where a party asserts a claim to realty in opposition to the written title, he has the burden of proof, and the evidence in support of it must be clear, full and satisfactory, nothing being left to conjecture or speculation.

*Appeal from District Court, Cascade County; H. H. Ewing, Judge.*

Action by the MacGinniss Realty Company against Elias K. Hinderager and others. Judgment for defendants, and plaintiff appeals. Affirmed.

*Messrs. Pray & Callaway* and *Mr. John F. Davies,* for Appellant, submitted a brief; *Mr. Lew. L. Callaway* argued the the cause orally.

After the purchase of the Kester Mid Canyon Ranch by John MacGinniss, its agent, the plaintiff, MacGinniss Realty Company, was the real, true and equitable owner thereof; and the judicial sale purchaser, its assignee, and the defendant took their muniments of interest subject to the prior equity of the plaintiff. (*Story* v. *Black,* 5 Mont. 26, 51 Am. Rep. 37, 1 Pac. 1.) In *Princeton Mining Co.* v. *First Nat. Bank,* 7 Mont. 530, 19 Pac. 210, it is held that the judgment creditor

who attaches the judgment debtor's real estate held in trust obtains no right as against the *cestui que trust,* even though the trust is no part of the records, citing *Osterman* v. *Baldwin,* 6 Wall. (73 U. S.) 116, 18 L. Ed. 730, and *Brown* v. *Pierce,* 7 Wall. (74 U. S.) 205, 19 L. Ed. 134. Not only is *Story* v. *Black* an authority in Montana, but it is the leading case in all notes embodying its principles. (See, also, *Interior Securities Co.* v. *Campbell,* 55 Mont. 459, 178 Pac. 582.) It can be little doubted that under the facts of the case MacGinniss was anything more than a trustee. (*Rothwell* v. *Dewees,* 2 Black (67 U. S.), 613, 17 L. Ed. 309; *Pindall* v. *Trevor,* 30 Ark. 249; *Ells* v. *Tousley,* 1 Paige Ch. (N. Y.) 280; *Barroilhet* v. *Anspacher,* 68 Cal. 116, 8 Pac. 804.)

Ever after the execution by John MacGinniss, its agent, to the MacGinniss Realty Company of the deed to the Kester Mid Canyon Ranch, plaintiff became the holder of the legal title thereto, and the judicial sale purchaser, its assignee, and the defendant acquired no title even though they may have purchased in good faith and without notice of such alienation. In respect to turning the property from his name to the MacGinniss Realty Company, John MacGinniss testified that in 1914 the attorneys of the company drew a deed and that he executed it, transferring the property from his individual name as agent to the MacGinniss Realty Company; that the deed was held at the bank to get his wife's signature, she being east at the time, and is in possession of the MacGinniss Realty Company, he having turned it back to its secretary.

"Where the judgment debtor alienates property prior to the attachment of the lien of a judgment against him, the purchaser of such property at an execution sale under such judgment acquires no title even though he purchased in good faith and without notice of such prior alienation." (17 Cyc. 1301; *Churchill* v. *Morse,* 23 Iowa, 229, 92 Am. Dec. 422; *Culp* v. *Kiene,* 101 Kan. 511, 168 Pac. 1097; *Chambers* v. *Lewis,* 28 N. Y. 454; *Martin* v. *Nash,* 31 Miss. 324; *Hundley* v. *Mount,*

8 Smedes & M. (16 Miss.) 387; *First Nat. Bank* v. *Hayzlett,* 40 Iowa, 659.)   There being no legal title in John MacGinniss at the time of the attachment of the Kester Mid Canyon Ranch, nothing passed to Emerson-Brantingham Implement Company, the judicial sale purchaser.   Having acquired nothing by virtue of such purchase, John McKenzie, its assignee, and his wife, stand in no better position than McKenzie's assignor. (*Reynolds* v. *Harris,* 14 Cal. 667, 76 Am. Dec. 459; *Davis* v. *Brace,* 82 Ill. 542; *Smith* v. *Huntoon,* 134 Ill. 24, 23 Am. St. Rep. 646, 24 N. E. 971.)

The sole and immediate muniment of alleged title under which the defendant predicates his rights to a decree in his favor against the plaintiff was of no greater dignity than a quitclaim deed which purported and intended to convey only the right, title and interest in the land as distinguished from the land itself, and hence transferred and assigned merely the interest of the grantors, such as it was.   Under such instrument the defendant acquired no title as against the prior alienation and the unrecorded deed executed by MacGinniss to the plaintiff.   (*Richardson* v. *Levi,* 67 Tex. 359, 3 S. W. 444; *Gress* v. *Evans,* 1 Dak. 378, 46 N. W. 1132; *Springer* v. *Bartle,* 46 Iowa, 688; *Kelley* v. *McBlaine,* 6 Kan. App. 523, 50 Pac. 963; *Marshall* v. *Roberts,* 18 Minn. 405, 10 Am. Rep. 201; *Stoeffel* v. *Schroeder,* 62 Mo. 147; *Baker* v. *Woodard,* 12 Or. 3, 6 Pac. 173; *Battershall* v. *Stephens,* 34 Mich. 68.)   And the application of the rule is not denied under the registry Acts. (*Donohue* v. *Vosper,* 189 Mich. 78, 155 N. W. 407; *Wickham* v. *Henthorn,* 91 Iowa, 242, 59 N. W. 276; *Postel* v. *Palmer,* 71 Iowa, 157, 32 N. W. 257; *Nash* v. *Bean,* 74 Me. 340.)

*Messrs. McKenzie & McKenzie,* for Respondent, submitted a brief; *Mr. John McKenzie* argued the cause orally.

In an action to quiet title to real estate the plaintiff must establish a legal, as distinguished from a mere equitable, title.

The holder of an equitable title to land cannot maintain an action to quiet title against the holder of the legal estate. (*Fudickar* v. *East Riverside Irr. Dist.*, 109 Cal. 29, 41 Pac. 1024; *Chase* v. *Cameron*, 133 Cal. 231, 65 Pac. 460, and cases therein cited; *Frost* v. *Spitley*, 121 U. S. 552, 30 L. Ed. 1010, 7 Sup. Ct. Rep. 1129 [see, also, Rose's U. S. Notes].)

What title or interest did plaintiff have in said real estate at the time of the attachment, May 6, 1914? The MacGinniss Realty Company had no money interest in the property in question until it paid John MacGinniss the $4,500, which was on or about December 15, 1914. At the time of the attachment, May 6, 1914, the title and right to the real estate were in John MacGinniss alone. He had paid the purchase price with his own money. The realty company had not even obligated itself to pay him and he had not in any way charged the realty company with the purchase price. And he held the legal title in himself by deed. Plaintiff at the time of the attachment and sale under execution at the most had possession. It could not have compelled John MacGinniss to sell or convey the land to it; nor could he have compelled plaintiff to make payment therefor. There was no contractual or trust relation between them. There was no resulting trust in favor of plaintiff. "For it is a cardinal rule that the trust results from the original transaction at the time it takes place, and at no other time; and it is founded on the actual payment of money and on no other ground." (*Eisenberg* v. *Goldsmith*, 42 Mont. 563, 113 Pac. 1127.) Neither was there a constructive trust because of fraud or bad faith on the part of John MacGinniss. (See *Largey* v. *Leggat*, 30 Mont. 157, 75 Pac. 950.)

A purchaser at execution sale takes the property sold subject to any lien or equity that might be enforced against the judgment debtor and of which the purchaser had notice. (10 R. C. L., secs. 122, 123.) "But before his title thus acquired can be defeated by an equity in a third person, the purchaser must have had actual notice thereof." (10 R. C. L. 1325;

*Equitable Loan & Security Co.* v. *Lewman,* 124 Ga. 190, 3 L. R. A. (n. s.) 879, 52 S. E. 599; *Johnson* v. *Equitable Securities Co.,* 114 Ga. 604, 56 L. R. A. 933, 40 S. E. 787; *De Lany* v. *Knapp,* 111 Cal. 165, 52 Am. St. Rep. 160, 43 Pac. 598; *Rooker* v. *Rooker,* 75 Ind. 571; *Pugh* v. *Highley,* 152 Ind. 252, 71 Am. St. Rep. 327, 44 L. R. A. 392, 53 N. E. 171.)

The purchaser at a judicial sale is entitled to the same protection afforded a purchaser at a private sale with reference to unrecorded instruments affecting the title to the property conveyed, and in the absence of actual notice the unrecorded instrument is invalid as against him. (*Weir* v. *Snider Saw Mill Co.,* 88 Ohio St. 424, Ann. Cas. 1915B, 233, 103 N. E. 133; *McNitt* v. *Turner,* 83 U. S. 352, 21 L. Ed. 341; *Frey* v. *Clifford,* 44 Cal. 335.) "The rule of *caveat emptor* applies to a purchaser at a judicial sale, but he is not bound to see what is not to be seen. He is protected by the recording acts, and secret defects in a title apparently good are for him no defects at all." (*Banks* v. *Ammon,* 27 Pa. St. 172.)

MR. CHIEF COMMISSIONER STARK prepared the opinion for the court.

This is an action to quiet title to a certain tract of land embracing 260 acres, known as the Kester Mid Canyon Ranch, located in Cascade county.

In its complaint, plaintiff alleges that at all times since about October 20, 1913, it has been, and at the time of the commencement of the suit was, the real, true, and equitable owner of, and in the actual possession of, the lands involved, but that the record title to said lands during all of this time had been in the name of John MacGinniss, its president and agent; that the defendants claim and assert an interest in and to the lands adverse to plaintiff, which claims are without any right whatever; and that neither of the defendants has any estate or interest in said lands or any part thereof. The defendants, other than Hinderager, filed answers disclaiming any interest in the lands. Defendant Hinderager alone con-

tested the plaintiff's claims, and we shall refer to him as the defendant.

Hinderager's answer denies the allegations of the complaint generally, but admits that for a period of time from about January 1, 1914, to April 27, 1916, the record title to the lands involved was in the name of John MacGinniss, and alleges that during such time said John MacGinniss, and not the plaintiff, was the owner thereof; admits that he claims and asserts an interest in the lands; and alleges that on May 3, 1917, he became, ever since has been, and now is, the owner and entitled to the possession thereof.

The case was tried before the court, without a jury, and resulted in findings and a judgment in favor of defendant, from which judgment the plaintiff has appealed to this court.

The evidence on the part of the plaintiff showed that John MacGinniss was the president and directing head of the plaintiff and had frequently bought lands for it under authority of its board of directors; that in September, 1913, MacGinniss, desiring to purchase the land in controversy, arranged with the defendant to negotiate with the owner, Kester, for an option on the same, which arrangement was evidenced by a letter, written by MacGinniss, as follows:

"Craig, Sept. 15—13.

"Mr. E. K. Hinderager—Dear Sir: Confirming our verbal agreement of to-day this is to certify that if you get the option to buy the Kester Mid Canyon 260-acre ranch executed as written by me and assign it to me at same price as you pay Kester I will buy your hay now stacked on the bottom land on said ranch at $8.00 per ton and pay you $100 for the pasture. I will also take over your lease on Foster's pasture at $75 if requested by you in thirty days. I hereby give you an option to buy 5 acres from me at the same price per acre that the Kester place costs me location of said 5 acres to be mutually agreed upon, to be in sight of the river and at the south end of the place where the land has not been cleared.

If we cannot agree then I agree to sell you 5 acres on the Hoffman place on the River east of track for same price per acre, said land not to be used for more than three head of cattle or 3 horses.

"Yours truly,

"John MacGinniss."

Pursuant to the terms of this letter, defendant obtained the option from Kester and assigned the same to MacGinniss. The purchase price of the land was $4,500, and of this amount $100 was paid by MacGinniss with his personal check, at the time the option was taken. In due course Kester executed a deed conveying the land to MacGinniss and sent it to the Silver Bow National Bank of Butte, with instructions to deliver the same when the balance of $4,400 was paid. When the deed reached the bank, MacGinniss, who was then president of that institution, gave the bank his personal check for $4,400 and directed the assistant cashier to send a draft for $4,400 to Kester, which was done, whereupon the deed was delivered, and subsequently on October 20, 1913, it was duly recorded in Cascade county.

MacGinniss testified that he bought this land for the plaintiff, and it was further shown that in January, 1914, a deed was prepared for the purpose of conveying the land from MacGinniss to the plaintiff, which was signed by and left with him for the purpose of obtaining his wife's signature; but she never signed the same, and it was subsequently lost. After MacGinniss bought the land, the plaintiff had the possession and management of it through its officers, agents, and employees, paid the running expenses, and received all the proceeds thereof. On December 15, 1914, the plaintiff paid to John MacGinniss the full sum of $4,500, which he had advanced as the purchase price of the land.

All the foregoing facts are embraced in appropriate findings made by the court.

On the part of the defendant, the evidence showed, and the court found, that on May 6, 1914, defendant Hinderager commenced an action against John MacGinniss in the district court of Cascade county for the recovery of money; and on the same day, under a writ of attachment duly issued out of said court, the sheriff of Cascade county duly levied upon and attached the lands in controversy as the property of John MacGinniss; that on May 8, 1914, the summons in the said action was placed in the hands of the sheriff of Silver Bow county, Montana, for service (that being the county of MacGinniss' last known place of residence); that on May 13, 1914, the sheriff returned the summons into court with his certificate indorsed thereon to the effect that after due search and inquiry he had been unable to find the defendant named therein within his county; that thereafter an affidavit for the publication of the summons in said action was duly filed in said court, upon the filing of which the clerk of the court made an order that the summons in said action be served upon the defendant, by publication; that thereupon an *alias* summons in due form was issued out of and under the seal of the court which was subsequently duly served upon the defendant therein by publication and proof of such service duly filed on August 27, 1914; that the defendant failed to appear or answer in said action within the time allowed by law, and on October 7, 1914, his default was duly entered therein; that thereafter such proceedings were had in the action that on January 29, 1916, a judgment was duly made and entered therein in favor of the plaintiff and against the defendant for the sum of $759.50, with interest at eight per cent per annum until paid, which judgment was to have the force only of a judgment *in rem* as to the property theretofore attached in the action, which property was described in the judgment, and is the land involved herein, and ordered that the plaintiff have execution against the same.

On March 30, 1916, an execution was duly issued on this judgment and placed in the hands of the sheriff of Cascade

county, under which on April 27, 1916, he duly sold the described lands to Emerson-Brantingham Implement Company, the highest and best bidder, to whom he thereupon delivered a certificate of sale therefor, and also filed a duplicate thereof in the office of the clerk and recorder of Cascade county.

On December 14, 1916, the Emerson-Brantingham Implement Company, for value, executed and delivered to one John McKenzie an assignment of the certificate of sale issued to it by the sheriff. No redemption was made from this sale, and on May 3, 1917, the sheriff of Cascade county duly made, executed, acknowledged and delivered to John McKenzie a sheriff's deed to the land; and on the same day McKenzie and his wife, for value received, conveyed the same, by quitclaim deed, to the defendant Hinderager. It is under this deed that the defendant asserts his title to the land in question.

In connection with the case of *Hinderager* v. *MacGinniss,* under which the above-mentioned sheriff's deed was issued, it should be further noted that the defendant therein on July 25, 1916, filed a motion, supported by an affidavit of merits and a proposed answer, to vacate the judgment and asking leave of the court to be let in to defend, on the ground that it had been taken against him through mistake, inadvertence, surprise and excusable neglect, which motion was denied by an order of the court entered on June 2, 1919.

On an appeal to this court, the order denying this motion to vacate the judgment was sustained. (*Hinderager* v. *MacGinniss,* 61 Mont. 312, 202 Pac. 200.)

The plaintiff argues that the decision in the above-mentioned case is not binding upon it, since it was not a party to that action; that, barring the curative effect of the general appearance of the defendant MacGinniss in the action, the judgment is void for the reason that the complaint therein does not state facts sufficient to warrant the issuance of a writ of attachment; that the *res* (which is the land in controversy) was not thereby brought within the jurisdiction of the court

by the levy under the writ in that proceeding, and, since the attempted service of summons upon the defendant was by publication, the court did not acquire jurisdiction to render a judgment against the land and direct its sale to satisfy the claim of the plaintiff in the action, as established therein; and further, that even though the complaint should be held sufficient for the purpose above mentioned, still the *alias* summons which was published did not contain a sufficient "general statement of the nature of the action" to comply with the requirements of section 9119, Revised Codes of 1921; and that for these reasons the judgment in that action is invalid as to this plaintiff and subject to collateral attack.

We have examined the entire proceedings in *Hinderager* v. *MacGinniss,* and without reference to the decision of this court therein, above referred to, we are of opinion that the contention of counsel is without merit. The complaint in the causes of action upon which judgment was rendered does state facts sufficient to warrant the issuance of a writ of attachment; the "general statement of the nature of the action" contained in the *alias* summons is sufficient under the statute, and the judgment rendered in said action is valid.

Coming now to a consideration of the case on its merits, it [1] is to be observed that the rights of the plaintiff and defendant to the land in controversy must be determined with reference to the condition of the title as it stood at the time of the levy of the attachment thereon in the case of *Hinderager* v. *MacGinniss,* on May 6, 1914, for the reason that the title of the purchaser of attached property at an execution sale relates back to the time of the levy of the writ of attachment. (4 Cyc. 624; *Riley* v. *Nance,* 97 Cal. 203, 31 Pac. 1126, 32 Pac. 315.)

So that under the deed executed by the sheriff to John McKenzie on May 3, 1917, John MacGinniss was divested of whatever right, title, and interest he had in the land on May 6,

1914, and the same passed to McKenzie, and by the conveyance from McKenzie *et ux.* defendant succeeded to the same.

That the legal, record title to the land stood in the name of John MacGinniss on May 6, 1914, is an admitted fact in the case. This alone, however, is not conclusive, for the purchaser [2] at an execution sale takes his title subject to certain limitations which are indicated in the rule laid down by this court in the case of *Story* v. *Black,* 5 Mont. 26, 52, 51 Am. Rep. 37, 1 Pac. 1, 10, as follows: ''The purchaser at a sale of real property on execution acquires all the right, title, interest and claim of the judgment debtor therein;   *   *   * but he acquires only such right and interest, and he takes the property subject to all the rights and equities of third parties which are capable of being enforced against the judgment debtor. 'The rule of *caveat emptor* applies to execution sales.' ''

Plaintiff claims that by reason of the facts disclosed in the [3] record it was the real, true and equitable owner of the land at the time of the levy under the writ of attachment, and its subsequent sale, and that the court erred in not so finding, from which contention it follows that the determinative question is: Did the plaintiff on May 6, 1914, have any equitable interest in the Kester Mid Canyon Ranch, which it could have enforced against John MacGinniss?

If such interest did exist, it must have been by virtue of some conveyance made, contract executed, or trust relation created to, with, or in favor of the plaintiff.

The court's findings of fact V*a* and XXXIII, which are supported by the evidence, are to the effect that MacGinniss had neither conveyed nor entered into any agreement to convey the land to the plaintiff at the time the attachment was levied thereon. Therefore, if the plaintiff did in fact have any interest in the land at the time of the levy, it was because the relation of *cestui que trust* and trustee existed between it and MacGinniss.

Section 6784, Revised Codes of 1921, provides:

"No trust in relation to real property is valid unless created or declared:

"(1) By a written instrument, subscribed by the trustee, or by his agent thereto authorized by writing;

"(2) By the instrument under which the trustee claims the estate affected; or,

"(3) By operation of law."

It is not claimed that the facts bring this case within the provisions of subdivisions 1 or 2 of this section; therefore, if MacGinniss at the time indicated held the title to the land as [4] trustee for the plaintiff, it must have been under subdivision 3 of this section, that is, by operation of law.

Section 6785 provides: "When a transfer of real property is made to one person, and the consideration thereof is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

In the letter above quoted, which MacGinniss wrote to Hinderager on September 15, 1913, when he was negotiating for an option to purchase the land, there is no intimation that he was trying to buy the land for anyone other than himself. In fact, the only reasonable inference to be drawn from this letter is that he was seeking to obtain the option for himself alone, for in it he said: "I hereby give you an option to buy five acres from me at the same price per acre that the Kester place costs me." This agreement to sell a portion of the land to a person other than the plaintiff is absolutely inconsistent with the theory that he was to hold the title to be acquired as trustee for the plaintiff.

Again, there is no showing that at the time of the purchase of the land by MacGinniss the plaintiff had in any way obligated itself to pay him therefor; neither is there any showing that he had charged the plaintiff with the amount until December 15, 1914, long after the levy of attachment.

The subject of a resulting trust, under circumstances making it peculiarly applicable to the facts in this case, was thoroughly

discussed by this court in the case of *Eisenberg* v. *Goldsmith,* 42 Mont. 563, 113 Pac. 1127, where the rule is laid down "that, in order to raise a resulting trust, the payment of the money as the consideration for the purchase of the property must be made at the time or before the legal title to the property passes to the party to be charged in the trust capacity, and that any moneys paid or contracts * * * made thereafter are not sufficient to raise a resulting trust."

Under the rule thus announced, the facts in this case wholly fail to show a resulting trust.

Nor was there a constructive trust in the land with the [5, 6] plaintiff as the beneficiary thereof at the time of the levy of the attachment. A constructive trust is created by operation of law, upon breach of a fiduciary relation by the person sought to be held; its basis is fraud, actual or constructive. (*Eisenberg* v. *Goldsmith, supra; Largey* v. *Leggat,* 30 Mont. 148, 75 Pac. 950.)

There is no suggestion in the case by pleading, proof or finding that, when MacGinniss bought the land and took title thereto in his own name, he was guilty of any actual or constructive fraud towards the plaintiff.

The record title to the land having been in MacGinniss on May 6, 1914, and the defendant having acquired all his rights as of that date, the burden of defeating that title was upon the plaintiff. "As in every instance where one person asserts a claim to an estate in opposition to the written title, so in this one must he assume and maintain the burden of proof, and the evidence in support of his claim must be clear, full, and satisfactory; that is to say, there must be sufficient positive facts proven to take the case out of the realm of conjecture and speculation." (*Eisenberg* v. *Goldsmith, supra.*)

If the plaintiff had brought suit against MacGinniss on May 6, 1914, for the purpose of enforcing its alleged equities in the land, it could not have prevailed upon any possible theory. It could not have shown a contract by him to convey the land to it; there was no trust agreement signed by him; the deed

under which he held title did not declare a trust; neither plaintiff nor anyone in its behalf had paid any part of the purchase price of the land so as to create a resulting trust; and no actual or constructive fraud had been practiced by him so as to create a constructive trust. An attempt to enforce a conveyance from him on the theory that he was to take title to the land in his own name and then convey it to plaintiff would have been defeated for the reason that such an agreement would be void under the statute of frauds.

Since the defendant stands in the same position with relation to the title to the land as MacGinniss did on May 6, 1914, and the plaintiff could not have enforced any alleged equities against him at that time, it cannot now enforce any against the defendant.

Under the foregoing determination, the question of notice imparted to the defendant by the plaintiff's alleged occupancy of the land through its agents and employees, and the findings of the court thereon, becomes wholly immaterial.

If we should concede all that counsel for plaintiff contend in that behalf, which we do not; and that defendant should have pursued every possible line of inquiry suggested by the alleged possession of plaintiff—the inquiry could only have resulted in ascertaining that plaintiff had no enforceable equities against him in the premises.

For the reasons above indicated, we recommend that the judgment be affirmed.

Per Curiam: For the reasons given in the foregoing opinion, the judgment appealed from is affirmed.

*Affirmed.*