LARGEY, RESPONDENT, v. LEGGAT, APPELLANT.

(No. 1,780.)

(Submitted March 7, 1904.   Decided March 21, 1904.)

*Partition Sale—Purchaser as Trustee—Evidence of Trust— Pleadings and Findings — Verbal Agreement — Merger in Written Contract—Attorney in Fact—Signature to Contract —Effect as to Liability—Specific Performance—Statute of Frauds.*

1.  Civil Code, Section 2186, provides that the execution of a contract in writing, whether required to be in writing or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied its execution, and hence evidence of negotiations and conversations immediately preceding the execution of a written contract is incompetent to show an agreement concerning its matter made by one claimed to be bound thereby.

2.  One who signs a contract only as attorney in fact for a party thereto is not bound by the contract, and it has the same effect, so far as an action against him based thereon is concerned, as if the party had signed only his own name thereto.

3.  By agreements between defendants in partition and L., the latter agreed, by himself or agent, to buy in the property at the sale in his own name,

and hold it for the former, to whom he was to reconvey the same, or a part thereof, as he should elect, on being reimbursed for the cost and expenses. One agreement was signed for one of the defendants by an attorney in fact, who afterwards bought the property at the sale in his own name, but who did not otherwise sign either agreement. *Held,* that the agreements did not establish a trust relation between the purchaser and L., who claimed that the property was bought for him.

4.   Pleadings alleging that a trust relation was created between parties in question by virtue of written agreements do not support conclusions of law declaring a party to be a trustee *ex maleficio.*

5.   Where it cannot be determined from either the pleadings or the evidence as to a contract to purchase property for another at a partition sale whether the purchaser was to furnish the money or not, or whether he was to take the deed in his own name or otherwise, neither would support a decree for specific performance on the part of the purchaser.

6.   An oral agreement by a purchaser at a judicial sale to take the deed in his own name, and convey to another, is void, as within the statute of frauds (Civil Code Section 2342).

7.   The agreement cannot be taken out of the statute, and enforced against the purchaser as a trustee *ex maleficio,* to prevent the perpetration of a fraud, where neither party had any interest in the property, and no money was advanced to the purchaser, or anything done towards carrying the agreement into effect.

8.   Findings not within the issue made by the pleadings will not support a decree.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

SUIT by P. A. Largey against John B. Leggat. Before the trial plaintiff died, and Lulu F. Largey, his administratrix, was substituted; and from a decree in favor of the latter, and from an order denying a new trial, defendant appeals. Reversed.

## STATEMENT OF THE CASE.

P. A. Largey brought suit in the district court of Silver Bow county to have the defendant declared to be a trustee, and to hold in trust for the use and benefit of plaintiff certain mining property, known as the "Gray Eagle Fraction Lode Claim," and to compel conveyance of such property to him.

The complaint alleges that in 1896 plaintiff, Largey, entered into a contract with O'Rourke, Clark and Ruth F. Leggat, three owners in the Gray Eagle claim, by the terms of which he agreed that he would attend a partition sale of that property, which had been ordered by the court in an action entitled *"Mur-*

*ray* v. *Clark et al.,"* and, in the event no bid was made on the property in excess of $7,000, he would, individually or by his agent, bid in the property, and pay for it with his own funds, taking the title in his own name, in trust, however, for the parties, O'Rourke, Clark and Ruth F. Leggat; that in pursuance of such contract he (plaintiff) entered into an agreement with defendant, John B. Leggat, by the terms of which defendant agreed to attend such sale and make bid for and purchase said property as the agent of plaintiff; that, relying on the agreement with defendant, plaintiff did not attend the sale or make other arrangements; that defendant attended the sale and purchased the property for $5,500, and such sale was confirmed; that defendant then repudiated the agreement referred to above, and claimed that he acted for himself in purchasing the property, took the deed therefor in his own name, and threatens to sell the property; and that plaintiff tendered to defendant the purchase price of the property. The prayer is that defendant be enjoined from disposing of the property; that he be adjudged to be a trustee, and to hold the same for the use and benefit of the plaintiff, and be required to make conveyance thereof.

To this complaint defendant filed an amended answer, which denies that defendant ever entered into any agreement with plaintiff to act as his agent, or to attend the partition sale, or to bid in the property for plaintiff, and denies that plaintiff was not represented at such sale, but avers that plaintiff did have a representative at the sale, who bid on the property for plaintiff. The answer then alleges that no agreement *in writing* was ever executed between plaintiff and defendant whereby defendant agreed to act for or as agent of plaintiff, or ever agreed to attend such sale, or bid on or purchase said property for plaintiff, or make any conveyance of such property to plaintiff.

In reply, plaintiff denies that no contract in writing was ever made, but alleges that two such contracts were entered into by defendant with plaintiff relative to the sale and bidding in of said property, whereby a relation of trust and confidence was created between plaintiff and defendant, and whereby defendant

was bound not to act in hostility to plaintiff in bidding on said property.

The cause was tried to the court without a jury, and at the conclusion of the trial the court made certain findings of fact and conclusions of law, and entered a decree against defendant. A motion for a new trial was made and overruled, and from the decree and order overruling defendant's motion for a new trial he appealed.

Before the trial, P. A. Largey died, and his administratrix was substituted.

*Messrs. Carpenter, Day & Carpenter,* for Appellant.

*Messrs. McBride & McBride,* and *Mr. Bernard Noon,* for Respondent.

MR. JUSTICE HOLLOWAY, after stating the case, delivered the opinion of the court.

Notwithstanding the purpose of the action, so far as indicated by the prayer of the complaint, it is very apparent from the pleadings that the only issues raised were: (1) Did plaintiff and defendant enter into an agreement whereby defendant promised to act as agent for the plaintiff in attending the partition sale, or in bidding for or purchasing the property in controversy? (2) If such agreement was made, was it in writing? And (3) if in writing, did it constitute defendant a trustee of the plaintiff?

In support of his contention, plaintiff offered in evidence the written agreement entered into between himself and O'Rourke, H. S. Clark and Ruth F. Leggat. This agreement, after reciting that a suit in partition had been commenced by James A. Murray and others, who were owners of 9-56 of the Gray Eagle fraction lode claim, against O'Rourke, Clark and Ruth F. Leggat, who were the owners of the remaining 47-56; that a decree in partition had been rendered; and that a sale of the property had been ordered for June 12, 1896, at 2 o'clock p. m.—then

provides that Largey should attend the sale, in person or by agent, and not permit the property to be sold to any one else for less than $7,000; that, in the event Largey's bid for any sum less than $7,000 should be accepted, he should advance the money necessary for paying for the interest in the property owned by Murray and his co-plaintiffs in the partition suit; that the deed for the entire property should be taken by Largey in his own name; that he should then have one year in which to elect whether or not he would retain for himself the 9-56 interest formerly owned by Murray and others, and, in the event he did so, O'Rourke, Clark and Ruth F. Leggat were to repay to Largey their proportionate shares of the cost and expense, with interest at the rate of one per cent. per month, and, in the event he did not so retain that interest, then O'Rourke, Clark and Ruth F. Leggat were to pay the amount of the purchase price of such property, together with costs and expenses, and interest thereon, and, in either event, receive deeds for their respective portions of the property. The foregoing are the only provisions of the contract material to this controversy.

This agreement was entered into on the 12th day of June, 1896, about 12 o'clock noon, and was signed by Largey, O'Rourke, H. S. Clark and Ruth F. Leggat, by John B. Leggat, her attorney in fact; John B. Leggat being the defendant in this action. Over the objection of defendant witnesses were permitted to testify on behalf of the plaintiff to certain negotiations and conversations had at the meeting on June 12th, when this contract was entered into, but before it was executed, to the effect that the parties, O'Rourke, one McConville, who seems to have had some interest in the same share as that represented by O'Rourke, and H. S. Clark, agreed among themselves that defendant, Leggat, should attend the partition sale and bid for the property for the use and benefit of all of them and of Largey, and that Largey also agreed to this arrangement; that after this agreement was finally concluded, the foregoing written agreement was executed. Defendant now complains that all of this testimony was incompetent, for the reason that whatever

conversation was had or verbal agreement made were merged in the written contract executed thereafter, and in this we think the defendant is correct. Section 2186 of the Civil Code provides: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Disregarding this incompetent testimony, then, we observe that there is nothing whatever in the written contract of June 12, 1896, which binds the defendant, Leggat, to do anything. In fact, the agreement is not signed by Leggat. The mere fact that the signature appears, "Ruth F. Leggat, by John B. Leggat, her attorney in fact," does not bind the defendant in this action at all. The agreement has the same effect, so far as this action is concerned, as if Ruth F. Leggat had signed her own name, and none other.

Plaintiff also offered in evidence what is designated in the record as the supplemental agreement, which is a mere memorandum in writing, signed by P. A. Largey only, whereby Largey agreed that in the event his bid for the property should be accepted, and he should not elect to retain for himself the 9-56 Murray interest, then he would execute to Ruth F. Leggat a deed for the 9-56 which she then owned, and her proportionate share of the 9-56 Murray interest, upon her paying to Largey her proportionate share of the purchase price, costs and expenses, and that in no event should Ruth F. Leggat be held to assume any part of the 9-56 Murray interest over and above her pro rata share thereof. The purpose of the execution of this agreement is not apparent; neither is its materiality in the trial of this cause.

There is some testimony in the record which tends to show that, prior to June 12th, Leggat had agreed with Largey that he would attend the sale and represent Largey in bidding for and purchasing the property; that he also suggested that one Morgan should also attend the sale and bid in conjunction with him. Leggat denies that he ever entered into any agreement

with Largey whatever, but says that Largey selected Morgan to act for him at the sale, and that he (Leggat) informed Largey that he intended to bid for himself at such sale. The testimony is undisputed that Leggat, Morgan and Will. L. Clark, private secretary to P. A. Largey, all attended the sale; that both Morgan and Leggat made bids for the property; that Leggat's bid for $5,500 was accepted as the highest bid; that after the sale Leggat paid to the referee ten per cent. of the purchase price required by the order of sale; that Largey offered to pay this money himself, but his offer was declined by Leggat; that afterwards, and before the commencement of this action, Largey made tender of the whole amount of the purchase price to Leggat, and also to the referee, and demanded from each that the deed be made to Largey, which offer was declined, and demand refused.

Upon this evidence the court made a large number of findings of fact. After finding the respective interests of the parties in the property prior to the date of the sale, and the fact of the impending sale, and execution of the agreement between Largey, O'Rourke, Clark and Ruth F. Leggat, the court finds (4) that the parties to that agreement selected defendant, John B. Leggat, to attend the sale and to bid in the property for the use and benefit of all the parties to that agreement, and that Leggat agreed to attend the sale as agent of Largey, and to bid on the property for the use and benefit of all the parties to that agreement; (5) that Leggat arranged with Morgan to attend the sale and in conjunction with him bid for the property for the benefit of the parties to such written agreement; (6) that Moran and Leggat did attend the sale, and did bid for the property for the use and benefit of all the parties to said written agreement; that Leggat's bid of $5,500 was accepted, and that Leggat then and there paid to the referee, for the use and benefit of the parties to said written agreement, ten per cent. of his bid, to-wit, $550; (7) that Leggat, in violation of his agreement to act for, and bid in the property for the use and benefit of the parties to the written

agreement, took the deed in his own name; (8) that, before the
deed was executed, Largey, for the use and benefit of all the
parties to said written agreement, tendered to the referee the
purchase price of the property, which was refused; and (9)
that he likewise tendered the amount to John B. Leggat, which
was refused.   The court then finds the respective interests of
O'Rourke, H. S. Clark and Ruth F. Leggat, and concludes with
finding No. 19, which is as follows: "That the allegations and
averments of plaintiff's complaint are true, and all the denials
and allegations of defendant's answer are untrue."

As conclusions of law, the court finds that, at the time that
Leggat bid for the property in controversy, he was the agent
of, and as such occupied a fiduciary relation towards, P. A.
Largey, O'Rourke, Clark and Ruth F. Leggat; that it would be
inequitable to permit Leggat to make use of his agency for the
purpose of depriving his principals of their property, and secur-
ing it for himself; that Leggat became, and is now, a trustee
*ex maleficio,* and by reason of said trust holds the title he ob-
tained by the referee's deed for the use and benefit of Largey,
O'Rourke, Clark and Ruth F. Leggat; and that the plaintiff, as
the trustee of the express trusts set out in the written agree-
ment made between Largey, O'Rourke, Clark and Ruth F. Leg-
gat, is entitled to a judgment and decree directing the defend-
ant, Leggat, to make, execute and deliver to the plaintiff a deed
for the property in controversy.

The findings are not supported by the pleadings, and, if the
incompetent testimony be disregarded, are not supported by
the evidence.   If the purpose of this action is to have the de-
fendant declared to be a trustee of the plaintiff, then the plead-
ings do not sustain the findings or decree.   The reply, which is
the only pleading containing any allegations which would tend
to show that defendant became such trustee, alleges that such
relationship was constituted by virtue of two written agree-
ments.   The only agreements offered in evidence were the origi-
nal agreement between Largey, O'Rourke, H. S. Clark and Ruth
F. Leggat, and the supplemental agreement between Largey

and Ruth F. Leggat, neither of which was signed by the defendant, and neither of which mentions him or assumes to bind him to do anything; and, giving them their broadest significance, they fall far short of establishing or tending to establish the relationship of trustee and *cestui que trust* as between Leggat and Largey.

As one of the conclusions of law, the court declared the defendant to be trustee *ex maleficio*, and that he holds the property in controversy in trust for the plaintiff, O'Rourke, Clark and Ruth F. Leggat; but such a conclusion has no support in the pleadings whatever. It may be a fact that defendant obtained certain information, from his being present with those parties, which, in equity and good conscience, he should not be permitted to make use of for his own benefit; but there is no allegation whatever in the complaint that defendant did any such thing, or that he was in fact present with the other parties named, or obtained any information from them, or that any relationship of trust or confidence could have been created between them. As we have said, the only allegations with reference to that subject are found in the reply, and those allegations are that the relationship of trustee and *cestui que trust* was created between Leggat and Largey by virtue of two written agreements; and, as we have observed, those agreements show nothing of the kind whatever.

At most, the competent testimony tends to show that, by oral agreement, Leggat undertook to act as agent for Largey in attending the sale and in bidding for the property, and that testimony tends to support the theory of the plaintiff as disclosed by the pleadings. But neither the pleadings nor this evidence would support a decree for specific performance, for the reason that the terms of the contract are too indefinite. It cannot be determined whether Largey was to furnish the money, or whether Leggat was to do so—whether Leggat was to take the deed in the name of Largey, or in his own name and transfer the property to Largey. If the contract was that Leggat was to take the deed in his own name and convey to Largey, then it

is void, as within the statute of frauds. (Section 2342, Civil Code; *Bauman* v. *Holzhausen,* 26 Hun. 505.)

Cases may be found where the contract has been taken out of the statute of frauds, to prevent the perpetration of a fraud, where one who has an interest in land which is about to be sold agrees with another that the other shall bid the property in, and hold it as security for money advanced, and that agreement has been consummated, or, in other instances, where there has been a part performance of the verbal agreement. And there are cases in which persons somewhat similarly situated as the defendant in this case have been made trustees *ex maleficio* of the property which they purchased at sales pursuant to parol agreements with others who were the owners, or had some interest therein, to buy for such persons' benefit. But in these cases the parol agreement was taken out of the statute of frauds to prevent the accomplishment of a fraud, whereby the owner of the whole or some interest in the property would be deprived of such interest, which it was the object of the parol agreement to protect. (*Bauman* v. *Holzhausen, supra.*) But in this instance neither Largey nor Leggat had any interest in the property. Largey advanced no money—in fact, did nothing towards carrying the verbal agreement into effect. Upon this subject the Supreme Court of New York said: "But no case can be found where a contract has been taken out of the statute, in favor of a party who had no existing interest in the property, who had done no act of part performance, who had parted with nothing under the contract, simply upon the ground that the other party was guilty of a fraud in refusing to perform his verbal agreement. That is all there is of this case, except the offer of performance by the plaintiff. To hold that to be sufficient to take the case out of the statute would repeal it. Care must be taken that this is not done under an idea that, as the statute was enacted to prevent fraud, it cannot be applied to cases where it appears that, in a moral sense, a party is attempting to perpetrate a fraud. A party in no legal sense commits a fraud by refusing to perform a contract void by its provisions.

He has not, in that sense, made a contract, and has a perfect right, both at law and in equity, to refuse performance." (*Levy v. Brush,* 45 N. Y. 589.) At most, the complaint alleges, and the proof tends to show, only a violation of a parol agreement on the part of an agent; and the one gives rise to, and the other supports nothing more than, an action for damages for the breach of such contract, and this is not such an action.

The findings are not within the issues made by the pleadings, and will not support a decree. (*Dutro* v. *Kennedy,* 9 Mont. 101, 22 Pac. 763; *Harris* v. *Lloyd,* 11 Mont. 390, 28 Pac. 736, 28 Am. St. Rep. 475.) If it be said that finding No. 19, above, is responsive to the issues, then, as observed before, the evidence is insufficient to support that finding, even assuming that the terms of the contract are pleaded with sufficient certainty.

The judgment and order are reversed, and the cause remanded, with directions to the district court to set aside the findings heretofore made, and to enter judgment for defendant for costs.

*Reversed and remanded.*