MORTON, RESPONDENT, *v.* UNION CENTRAL LIFE INSURANCE CO., APPELLANT.

(No. 6,025.)

(Submitted April 21, 1927. Decided October 1, 1927. Opinion on Motion for Rehearing November 25, 1927.)

[261 Pac. 278.]

*Conversion—Mortgages on Farm Lands — Subsequent Chattel Mortgage on Crops—Rents, Issues and Profits—When Holder of Mortgage on Land not Entitled to Crops—Equity—Constructive Trusts.*

Chattel Mortgage—Crops—Statutory Method Exclusive.
1. Annual crops are usually treated as chattels personal, subject to sale or mortgage and levy of execution as other chattels are, even while still annexed to the soil, and are not included within the definition of real property; they are mortgageable as personal property and the method thereof prescribed by section 8290, Revised Codes of 1921, is exclusive.

Real Estate Mortgage not Constructive Notice to Chattel Mortgagee on Crops.
2. The record of a real estate mortgage on farm land imparts no constructive notice to a chattel mortgagee of the crops subsequently grown upon the land.

Same—Provision That Mortgagee Entitled to Rents and Profits on Default of Mortgagor—Effect on Lien Subsequently Acquired.
3. Where a mortgage on farm lands provides that upon failure of the mortgagor to pay any one of the mortgage notes at maturity

---

1.  See 8 R. C. L. 356.

the entire debt shall at the option of the mortgagee at once become due and payable without notice and the latter shall be entitled to the immediate possession of the premises and to receive rents, issues and profits thereof, etc., the mortgagee does not thereby obtain a lien on the rents and profits which prevents a subsequent one from becoming superior in the absence of some action on the part of such mortgagee to reduce the rents and profits to his possession.

Same—Failure of Mortgagee to Take Possession on Default of Mortgagor—Effect on Right to Crops Grown Thereon by Tenant of Mortgagor.

4. *Held,* under a mortgage on farm lands providing that the mortgagee was entitled to immediate possession of the premises if any one of the mortgage notes should remain unpaid at maturity and to receive the rents, issues and profits thereof, that conceding that the mortgagee in such event could impose a lien on the mortgagor's (landlord's) share on the crop standing on the premises in possession of a tenant, as additional security for the payment of the debt, actual and continued possession of the land by him was essential to the creation and maintenance of such lien as against the claim of one who had taken a chattel mortgage on the crops after the execution of the mortgage on the land; constructive possession by way of filing a lis pendens in an action of ouster against the tenant being insufficient for that purpose. (JUSTICES MYERS and GALEN dissenting.)

Equity—Maxim That That Which Should have Been Done to be Regarded as Done—To Whom Applicable.

5. The equitable doctrine that that which ought to have been done must be regarded as done does not operate in favor of every person, but only in favor of him who holds the equitable right to have the act performed, as against the one upon whom the duty of such performance has devolved.

Mortgages—Constructive Trust—Basis is Fraud—To Whom Doctrine Inapplicable.

6. The basis of a constructive trust is fraud, actual or constructive; hence where the act of a tenant of mortgaged land in refusing to deliver possession thereof to the mortgagee on demand based on a provision in the mortgage entitling him to possession on failure of the mortgagor to pay one of the mortgage notes, resulting in ouster proceedings, did not fall within the statutory definition of either actual or constructive fraud, the contention of the mortgagee that the tenant by his wrongful act in withholding possession became a constructive trustee and that his possession after demand was the possession of the mortgagee cannot be sustained..

Same—Conversion of Crops Grown on Mortgaged Land—Complaint Insufficient for Failure of Allegation That Plaintiff had Created Lien by Taking Possession.

7. In an action in conversion to recover the value of grain delivered to an elevator upon which plaintiff held a chattel mortgage

---

5. Priority rights of chattel mortgagee of crops as against mortgagee of real property, see note in 47 A. L. R. 772. Efficacy of chattel mortgage as against real estate mortgage, see note in 15 L. R. A. 57.

6. See 10 R. C. L. 383.

7. Creation of constructive trust by fraud, see note in 115 Am. St. Rep. 787. See, also, 26 R. C. L. 1232.

[80 Mont. 593.]

and which was claimed by the mortgagee under his mortgage on the land on which the grain had been raised, *held* that the trial court properly sustained a demurrer to the mortgagee's cross-complaint for failure to allege that he had created a lien on the crop by taking actual possession of the land on which it was grown. (See par. 4 above.)

---

[1]  Chattel Mortgages, 11 C. J., sec. 50, p. 442, n. 66. Crops, 17 C. J., sec. 1, p. 379, n. 5, 6. Executions, 23 C. J., sec. 51, p. 329, n. 61.
[2]  Mortgages, 41 C. J., sec. 524, p. 566, n. 20.
[3]  Mortgages, 41 C. J., sec. 578, p. 610, n. 83; sec. 601, p. 624, n. 87; sec. 605, p. 628, n. 38.
[4]  Chattel Mortgages, 11 C. J., sec. 207, p. 526, n. 3.
[5, 6]  Chattel Mortgages, 11 C. J., sec. 394, p. 652, n. 91 New. Equity, 21 C. J., sec. 191, p. 201, n. 25, 30. Mortgages, 41 C. J., sec. 601, p. 625, n. 98 New.
[7]  Trusts, 39 Cyc., p. 169, n. 11, p. 190, n. 98.
[8]  Chattel Mortgages, 11 C. J., sec. 412, p. 661, n. 16.

*Appeal from District Court, Fergus County; John C. Huntoon, Judge.*

ACTION by G. C. Morton against Frederick W. Kidd and the Farmers' Co-operative Elevator Company, which filed a cross-complaint interpleading the Union Central Life Insurance Company and others. From a judgment for plaintiff against the Union Central Life Insurance Company, the latter company appeals. Affirmed.

*Mr. William T. Pigott* and *Mr. Bennett H. Smith,* for Appellant, submitted an original and a reply brief; *Mr. Pigott* argued the cause orally.

Appellant mortgagee was entitled by contract to the immediate possession of the land and growing crop. It was the duty of owner of the land and of the tenant to surrender possession to appellant. It promptly made demand for possession, by action and otherwise, while the crop was growing. Possession was refused, and afterward the crop was severed and removed from the land without appellant's consent. Respondent claims the wheat under a chattel mortgage which is subject to the prior lien of appellant's mortgage. What effect, if any, must be given to appellant's action and demands for possession?

This maxim, or principle, of jurisprudence, is declared by Revised Codes, section 8758: "That which ought to have been done is to be regarded as done, in favor of him to whom, and against him from whom, performance is due." Equity regards that as having been done at the time it should have been done, is a paraphrase.

This doctrine is always applicable except in cases where, to give it effect, "would injure third persons who have" suffered "detriment, and acquired consequent rights, by the acts that are done." (*Casey* v. *Cavaroc,* 96 U. S. 467, 491, 24 L. Ed. 779; *Casey* v. *National Bank,* 96 U. S. 492, 24 L. Ed. 789 [see, also, Rose's U. S. Notes].) "The principle upon which the whole of this doctrine is founded is, that a court of equity, regarding the substance and not· the mere forms * * * , considers things directed or agreed to be done as having been actually performed, where nothing has intervened which ought to prevent a performance." (*Craig* v. *Leslie,* 3 Wheat. (U. S.) 563, 4 L. Ed. 460; *Cropley* v. *Cooper,* 19 Wall. (U. S.) 167, 22 L. Ed. 109.) If by wrongful conduct one prevents acts to be done which ought to have been done, equity treats the case as if they were done. This principle is merely a part of the maxim—the most important, efficacious and far-reaching in jurisprudence—which appellant confidently invokes; it finds support in a vast multitude of cases, among which are *Carpenter* v. *Insurance Co.,* 4 How. (U. S.) 185, 11 L. Ed. 77; *Taylor* v. *Longworth,* 14 Pet. (U. S.) 172, 10 L. Ed. 414; *Halla* v. *Rogers,* 176 Fed. 709, 100 C. C. A. 263, 34 L. R. A. (n. s.) 120.

Now for cases applying the principle, or maxim, to cases like the one at bar—and we have discovered none which have refused in like circumstance to give effect to it: One of the leading cases, if not the leading case, repeatedly approved and followed by the court which decided it, and cited as authority too often by other courts, national and state, to permit enumeration here, is *Dow* v. *Memphis & Little Rock R. R. Co.,* 124 U. S. 652, 654, 655, 31 L. Ed. 565, 8 Sup. Ct. Rep.

673 [see, also, Rose's U. S. Notes]. It is directly in point upon the question presented by this appeal. So far as we can ascertain it has never been doubted or questioned. That case was not an action to foreclose a mortgage. Neither was the action by appellant one to foreclose its mortgage. The *Dow Case* was brought to enforce surrender of possession of mortgaged property to the mortgagee. Appellant's action was likewise brought to gain possession of the property mortgaged to appellant. The mortgage in the *Dow Case* provided, by way of additional security, that in the event of default for sixty days in payment of interest the mortgagee was authorized to enter upon and take possession of "all and singular  *  *  * property conveyed,  *  *  *  and take and receive the income and profits thereof." In the case at bar the mortgage provided, by way of additional security, that in the event of default in the payment of any note, the entire debt should, at appellant's option, at once become due without notice, and thereupon appellant should be entitled to immediate possession of the property and to receive the issues and profits thereof. In the *Dow Case* the mortgagor failed to pay interest falling due and thereafter, and for that reason, the mortgagee brought suit for possession of the mortgaged property in accordance with the terms of the mortgage. In the instant case the mortgagor defaulted in payment of the note which matured on February 1, 1924, and early in the following August the mortgagee elected to declare the entire debt due at once, and brought action above referred to to recover immediate possession, and made demand in other ways for possession thereof; but possession was refused and the property remained in possession of the successor to the title of the mortgagor or her tenant who severed from the land wheat thereon growing. In the *Dow Case* the contention was made, as the contention is made in the instant case, that no demand had been made for possession, and that the suit for possession was not such demand,—the difference in this respect between the facts in the two cases being that the only demand in the *Dow*

*Case* was the commencement of the suit to recover possession, whereas in the case at bar there was not only the institution of the possessory action but there were also actual demand and notice thereafter made and given before severance of the wheat. In the *Dow Case* it was contended that until the appointment of the receiver therein the mortgagor had the right to retain and dispose of the issues and profits earned theretofore; and that the bringing of the suit for possession did not entitle the mortgagee to the issues, profits and earnings which accrued thereafter and before the appointment of the receiver. In the instant case respondent contends that the refusal of appellant's demands and wrongful detention from it of the property destroyed appellant's right to possession, and transferred by operation of law the right of possession to, and vested in it, respondent, a subsequent lienor with notice of all appellant's rights under its superior mortgage; that because appellant did not succeed in gaining *possessio pedis,* to which it was clearly entitled, it lost all rights under the contract providing for its taking possession,—a contention shocking to the moral sense and without support in law or equity. The *Dow Case* and this one are identical so far as the principle under discussion is involved. The court said: "It is well settled that the mortgagor of a railroad, even though the mortgage covers income, cannot be required to account to the mortgagee for earnings, while the property remains in his possession, until a demand has been made on him therefor, or for a surrender of the possession under the provisions of the mortgage. * * * In the present case a demand was made for the possession by the bringing of this suit, February 12, 1884, and from that time, in our opinion, the company must account. The bill was not filed to foreclose the mortgage, but to enforce a surrender of possession to the" mortgagee "in accordance with its terms. The court below decided that the" mortgagee "was entitled to the possession when the suit was begun. * * * We must assume, therefore, that the demand was rightfully made, and

ought to have been granted. It follows that after the suit was begun the company wrongfully withheld the possession, and under such circumstances equity forbids that it should retain, as against the mortgagee, the fruits of its refusal to do what it ought to have done. It is a matter of no consequence that a receiver was not appointed until April 15, or that an application was not made for such an appointment until March 24. If the surrender of possession had been made, as we must assume it ought to have been, as soon as the suit was begun, a receiver would have been unnecessary. All that was done afterward in that particular was in aid of the suit and because of the refusal of the company to comply with the demand that had been made. It follows that from the time of the bringing of the suit the company itself is to be treated in all respects as a receiver of the property, holding for the benefit of whomsoever in the end it should be found to concern.'' The *Dow Case,* on the points mentioned in the foregoing quotation, has been affirmed in *Sage* v. *Memphis & L. R. R. Co.,* 125 U. S. 361, 377, 31 L. Ed. 694, 8 Sup. Ct. Rep. 887; *Fredman's Savings & Trust Co.* v. *Shepherd,* 127 U. S. 494, 503, 32 L. Ed. 163, 8 Sup. Ct. Rep. 1250; *U. S. Trust Co.* v. *Wabash West. Ry. Co.,* 150 U. S. 287, 37 L. Ed. 1085, 14 Sup. Ct. Rep. 86; *Southern Ry. Co.* v. *Carnegie Steel Co.,* 176 U. S. 257, 295, 44 L. Ed. 458, 485, 20 Sup. Ct. Rep. 347. *Barron* v. *Whiteside,* 89 Md. 448, 43 Atl. 825, is another leading case on this subject.

Taking of actual possession by appellant in order to protect, preserve and perpetuate its right to the wheat was wholly unnecessary as between it and the respondent, or between it and other persons with notice claiming by rights subsequent to appellant's mortgage. In one event, and in only one, could it have been necessary in order to protect and preserve appellant's right to possession, for it to manifest that right— give ocular evidence of its election and right to possession—by entering into actual occupancy, to-wit, where some innocent person ignorant of appellant's rights should purchase or take

a lien on the wheat after it had become personal property by severance, if such innocent person without notice can be imagined. So far as law and equity are concerned, the demand, or demands, were sufficient as against respondent, to preserve and continue appellant's rights, no matter what diminution of the value of the security might ensue upon failure to obtain such actual possession.

This subject may well be viewed in a different aspect leading to the same result, which aspect is suggested by Revised Codes, sections 7886 and 7887, by 3 Pomeroy's Equity Jurisprudence, section 1044, and by the *Dow Case,* supra. Section 7886 of the Revised Codes provides that: "One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Section 7887 of the same codes declares that: "One who gains a thing by wrongful act, is, unless he has some other or better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who otherwise would have had it."

Skarda, tenant in possession, wrongfully detained the land and wheat growing thereon and a part thereof from appellant. Skarda remained in possession of land and wheat, and when the wheat had matured he, or Kidd, or some equally guilty person, severed it, and removed it from the land. Skarda, therefore, became an involuntary trustee for appellant, holding possession for appellant. It follows that appellant through Skarda, trustee, or receiver, and vicariously for appellant did have possession as soon as its demands were ignored, and so remained in possession through Skarda's occupancy as trustee or receiver.

*Messrs. Belden & DeKalb* and *Mr. Merle C. Groene,* for Respondent, submitted an original and supplemental brief; *Mr. Groene* argued the cause orally.

To arrive at a final conclusion, we desire to ask two questions: (1) Does the title to a growing crop pass the moment an action is brought to recover possession of the land? (2)

In an action of ejectment in this state, can the court, in its judgment, give to the successful plaintiff title to a crop growing upon the land at the time the action was instituted, but which crop has been severed and removed before judgment? We believe these questions answer themselves and decide this controversy in respondent's favor.

Section 8687, Revised Codes 1921, provides: "The detriment caused by the wrongful occupation of real property * * * is deemed to be the value of the use of the property for the time of such occupation, not exceeding five years next preceding the commencement of the action, or proceedings to enforce the right to damages and the costs, if any, of recovering the possession." In *Leyson* v. *Davenport,* 38 Mont. 62, 98 Pac. 641, this court, in construing the above section, made reference to the former actions for mesne profits, and holds that this statute supersedes the former actions for mesne profits.

In 19 C. J. 1244, the rule is laid down: "While the owner may recover for the use and occupation of the land, he can in no case be held to be the owner of the crops grown and actually harvested on the land by the defendant while in possession."

In the case of *Stockwell* v. *Phelps,* 34 N. Y. 363, 90 Am. Dec. 710, the court said in a replevin action brought as to certain hay: "The judgment was right. Wild, when the action was commenced, was in actual possession of the premises from which the hay in question was cut, claiming them as his own and adversely to the plaintiffs; and whatever right the plaintiffs might have had to maintain an action after obtaining possession of the premises, it is clear they had no right of action whatever when this one was commenced." In other words, until they had possession of the premises, a replevin action would not lie to recover the crops.

In the case of *Nash* v. *Sullivan,* 32 Minn. 189, 20 N. W. 144, a suit had been brought to recover the value of grain which the defendant had harvested and removed before he was evicted from the land, and the court said, "Compensa-

tion is the measure of damages," and held that plaintiff could acquire no interest whatsoever in the crops. In the case of *Page* v. *Fowler,* 39 Cal. 412, 2 Am. Rep. 462, the court said: "The very fact that he may recover the rents and profits of the land shows that he cannot recover the crops," for as was well said in the case of *Stockwell* v. *Phelps,* 34 N. Y. 363, 90 Am. Dec. 710, the owner of the land in such cases does not recover the value of the crops raised and harvested, but the value of the use and occupation of the land; and the annual crops of grain and grass, which contain both the value of the use of the land and the labor of the former, do not, under such circumstances, belong to the owner of the land. (See, also, *Church* v. *Ackerman,* 22 Wash. 227, 60 Pac. 407; *Brothers* v. *Hurd,* 32 N. C. 490, 51 Am. Dec. 403; *Kirtley* v. *Dykes,* 10 Okl. 16, 62 Pac. 808; *Phillips* v. *Keysaw,* 7 Okl. 674, 56 Pac. 695, 697; *Groome* v. *Almstead,* 101 Cal. 425, 35 Pac. 1021; *Meeker* v. *Gardella,* 1 Wash. 139, 23 Pac. 837; *Johnston* v. *Fish,* 105 Cal. 420, 45 Am. St. Rep. 53, 38 Pac. 979; *Lafayette* v. *Hood,* 7 Ind. Ter. 615, 104 S. W. 853.)

This court had before it, in *Blinn* v. *Hutterische Society,* 58 Mont. 542, 194 Pac. 140, practically an analogous situation. In that case, the plaintiff, claiming to be entitled to the immediate possession of the land, desired to restrain the defendants from harvesting the crop or going upon the land. This court said: "The practical effect of the injunction as issued was to oust the society from its possession and install the plaintiffs in possession, and for such a purpose injunction is not an available remedy." Why? Because plaintiff had an adequate remedy at law. If the right to possession was deemed properly in the plaintiff, he could recover damages as provided by statute.

In the case at bar, if appellant could have established the necessary facts, it might have had a receiver appointed to take charge of the crops then growing, or if it was entitled to the immediate possession of the crops, or the owner thereof, it might have had a remedy by claim and delivery. But it

invoked no provisional remedy; just a straight action, which it has never prosecuted to final determination. There was nothing before the lower court which gave to appellant a scintilla of evidence of ownership of the crops. Skarda, through the original mortgagor, may have had an absolute defense to the action.

This likewise disposes of the argument that Skarda became involuntary trustee for the benefit of appellant. However, if such an argument could be urged, it is answered completely by the facts. Skarda could not be a trustee for appellant for something appellant never possessed. Further than this, respondent could not be charged with notice of any trusteeship. A notice of *lis pendens* such as was filed by appellant only gives notice to purchasers or encumbrancers of the real property (sec. 9109, Rev. Codes 1921), and service of a notice upon the attorney-in-fact for Kidd was not notice to his mortgagee.

MR. JUSTICE STARK delivered the opinion of the court.

On September 24, 1918, Lottie M. Conyngham borrowed $9,200 from the Union Central Life Insurance Company, and, as evidence of the indebtedness thus created, gave the insurance company twenty-one promissory notes in different amounts, the first of which matured on February 1, 1919, and one of the remaining twenty matured on the same date in each of the succeeding twenty years, and, to secure the payment thereof, executed and delivered to the insurance company a mortgage upon a tract of land then owned by her, situated in Fergus county, which mortgage was thereafter, on October 7, 1918, duly filed and recorded in the proper office of that county. Among other things this mortgage provided: "That if any of said notes * * * be not paid at maturity, * * * the entire debt secured hereby, shall at the option of the said second party [mortgagee], at once become due and payable without notice, and thereupon the said second party * * * shall be entitled to immediate possession of said premises and

to receive rents, issues and profits thereof, and the occupants, if any, of said real estate, shall pay rent to the said second party.''

Subsequent to the date of the mortgage, Frederick W. Kidd succeeded to the title of Conyngham. Some time in 1924, Skarda came into possession of the mortgaged land as the tenant of Kidd. The exact time when this relation was created does not appear, but since appellant assumes in its argument that Skarda so held possession from about February 1 of that year and so continued in possession down to August 12, we shall accept this as a fact. As such tenant Skarda put in a crop of spring wheat upon the land, which was standing thereon unharvested on August 12, 1924.

On June 10, 1923, to secure payment of a promissory note for $1,000 of that date, but due on September 1, 1924, Kidd executed and delivered to plaintiff, G. C. Morton, a chattel mortgage covering a one-third interest in all the grain growing upon the land for the season of 1924. This mortgage was filed in the proper office on August 12, 1924.

One of the promissory notes secured by the mortgage from Conyngham to the insurance company matured on February 1, 1924, and was not paid. In the month of August of that year the insurance company, pursuant to the provisions of the agreement therefor which was incorporated in its mortgage and which is above quoted, elected to declare the entire debt secured by the mortgage to be immediately due and payable and to exercise its right to the immediate possession of the premises covered by the mortgage, and thereupon commenced an action against Skarda to recover such possession. At the time of the commencement of this action the plaintiff therein, the insurance company, filed in the office of the clerk and recorder of Fergus county a notice of *lis pendens,* setting forth the names of the parties to the property affected by it and the purpose of the action, and on or about August 12, 1924, served a duplicate thereof upon Skarda, the Farmers' Co-operative Elevator Company, and Lottie M. Conyngham, the agent and attorney-in-fact of the defendant Kidd, and at the same time

"advised" these parties that it was then the owner and entitled to the immediate possession of the crop of wheat then growing upon the land. What disposition was eventually made of this action is not shown, but it does appear that Skarda remained in the actual possession of the mortgaged land until at least the tenth day of September, 1924, and that subsequent to the twelfth day of August he cut, harvested, and threshed therefrom 1,097 bushels and forty pounds of spring wheat which he delivered to the elevator company.

On April 3, 192., Morton commenced an action against Kidd and the elevator company for the foreclosure of the chattel mortgage given to him by Kidd on June 10, 1923, alleging that the note secured thereby was wholly unpaid; that the 1,097 bushels and forty pounds of spring wheat grown on the lands in question were covered by his mortgage; that when it was delivered to the elevator company the latter had both constructive and actual notice of that fact; that he had demanded possession of it from the elevator company, which demand had been refused, and that the elevator company had converted the same to its own use; and prayed judgment against Kidd for the amount of the note, with interest, costs and attorney's fees, and against the elevator company for the value of the wheat at the date of its alleged conversion.

To this complaint the elevator company filed a cross-complaint, setting forth that it had received from Kidd 1,097 bushels and forty pounds of wheat and that its value was $1,185; that the Union Central Life Insurance Company and Morton had each asserted, and were asserting, claims thereto and had each brought an action against it to recover said wheat or the value thereof, which actions were pending and undetermined; that it had no knowledge or information as to which of said parties was lawfully entitled to the grain or the value thereof; that it was ready, able and willing to pay to the one entitled thereto the value of said grain and had been at all times since the same was delivered to it; that it therewith paid the sum of $1,185 into court and prayed that Morton and the Life Insurance Company might be required to litigate their

claims thereto; and that it should be discharged from liability to either of them.

To this cross-complaint Morton filed an answer asserting his right and claim to the grain in controversy or the value thereof, as alleged in the complaint. The Life Insurance Company also answered, and, as a separate affirmative defense, counter-claim and cross-complaint, set forth the execution of the notes and mortgage from Conyngham to itself, the record of the mortgage, the default therein of February 1, 1924, its election, in August, 1924, to declare the whole amount of the mortgage immediately due, the institution of its proceedings to recover possession of the land from Skarda, the tenant of Kidd, and the filing and service of copies of the notice of *lis pendens,* and its claim to be the owner of the crop of wheat growing upon the land, as hereinbefore recited; also that at the date of the commencement of this action against Skarda for recovery of the possession of the premises there was planted and growing thereon a certain crop of wheat, and that subsequent to the service of said notice of *lis pendens* Skarda wrongfully and un-lawfully remained in possession of the premises contrary to the demand for the possession thereof, and did wrongfully and unlawfully sever, harvest and thresh said wheat, and on or about the tenth day of September, 1924, did wrongfully and unlawfully deliver the same to the defendant elevator company, which wrongfully and unlawfully received the same, said wheat being the same wheat mentioned in the cross-complaint of the elevator company; that ever since the commencement of said action to recover possession of the premises from Skarda it had been, and then was, the owner and entitled to the possession of said wheat, and that the elevator company was wrongfully and unlawfully withholding the same from it. It further alleged that Skarda claimed said wheat as tenant of the defendant Kidd; that Kidd claimed the same as the landlord's share of the 1924 crop raised on the mortgaged premises; that Morton claimed the same under the chattel mortgage executed and delivered to him by Kidd; and that all of said claims are subject, subordinate and inferior to its right, title

and interest in the wheat and its right to the immediate possession thereof; and prayed that it be adjudged and decreed to be the owner of and entitled to the wheat in preference to the claim of Morton, the elevator company, Kidd and Skarda, and that it have judgment for the return thereof, or, in case delivery could not be had, that the court order and decree the $1,185 turned into court by the elevator company be delivered over to it.

To this separate affirmative defense, counterclaim and cross-complaint Morton and the elevator company each filed separate general demurrers, which were sustained by the court. The insurance company having failed to amend its separate defense, counterclaim and cross-complaint within the time allowed, judgment was rendered and entered in the action adjudging that the insurance company had no claim against the money deposited in court by the elevator company as the value of the wheat so delivered to it, but that Morton was entitled to the same. From this judgment the insurance company has appealed.

While Skarda, the tenant in possession, is referred to in the insurance company's cross-complaint as a defendant, the record does not disclose that he was ever made such, and he did not appear in this action, so that whatever rights, if any, he may have had are not in any way involved in this proceeding.

Stated concretely, the question before us for determination is this: Does the insurance company's cross-complaint show that under any evidence which properly might be admitted to sustain its allegations it would be entitled to recover the money deposited with the clerk of the court as the proceeds of one-third of the crop of spring wheat harvested from the mortgaged land in the year 1924, as against the plaintiff, Morton, who, according to such cross-complaint, claims the same as the mortgagee of the share of the landlord, Kidd?

The insurance company's mortgage did not vest it with title to the real estate. (Sec. 9495, Rev. Codes 1921.) It did not assume to cover either the crops growing or thereafter to be

grown upon the mortgaged premises, or the rents, issues or profits thereof, except as mentioned in the paragraph thereof heretofore set out.

Annual crops such as wheat, oats and the like "are usually [1] regarded and treated as chattels personal, subject to sale or mortgage and levy of execution as other chattels are, even while still annexed to the soil," and "are not included within the definition of real property" declared by sections 6666–6671, Revised Codes of 1921. (*Power Merc. Co.* v. *Moore Merc. Co.*, 55 Mont. 401, 177 Pac. 406, and authorities therein cited.) Such crops may be mortgaged as personal property within the limits prescribed in section 8290, Id., and this method of mortgaging such crops is exclusive. (*Simpson* v. *Ferguson*, 112 Cal. 180, 53 Am. St. Rep. 201, 44 Pac. 484; *Modesto Bank* v. *Owens*, 121 Cal. 223, 53 Pac. 552; Jones on Chattel Mortgages, sec. 122.)

It is not pleaded that the insurance company's mortgage was [2] filed as a chattel mortgage. The record thereof as a real estate mortgage imparted no constructive notice to a chattel mortgagee of the crops subsequently grown upon the mortgaged premises. (*Trulock* v. *Donahue*, 76 Iowa, 758, 40 N. W. 696; *Whiteside* v. *Morris*, 197 Iowa, 211, 197 N. W. 56.)

The mortgage did not vest the insurance company with the [3] right to the crops grown intermediately of the giving of the mortgage and the time when the mortgagor or her successors in interest were properly deprived of possession of the mortgaged property. Until the happening of that event the mortgagor and her successors were entitled to such crops and to do with them as though the mortgage had not existed, and it appears that the mortgagor's successor in interest did execute the chattel mortgage upon the one-third interest of the crop in question to the plaintiff, Morton, claiming the same as the landlord's share from the tenant, Skarda, who was in actual possession of the land. This chattel mortgage, as appears, was duly filed on August 12, 1924.

It was competent for Conyngham and the insurance company to insert in the real estate mortgage the provision grant-

ing to the mortgagee the right, upon default of the mortgagor, to enter upon and take possession of the mortgaged premises and to receive the rents, issues and profits thereof.   (Sec. 8252, Rev. Codes 1921.)

In an extended note appended to the case of *Sullivan* v. *Rosson,* 4 A. L. R., at page 1405, treating upon the validity, construction and effect of the provision in real estate mortgages as to the rents and profits covering the provisions authorizing the mortgagee to take possession of the rents and profits in case of default (similar to the ones contained in the mortgage under consideration), the writer summarizes the holdings of the various courts in these words: "The great weight of authority as regards all these various forms of pledges is to the effect that the mortgagee does not thereby acquire a lien on the rents and profits, which prevents a subsequent lien from acquiring priority in the absence of some action on his part to reduce the rents and profits to his possession."

Counsel for the insurance company do not contend that the paragraph of the mortgage above quoted created or imposed a lien upon the crops growing or to be grown upon the mortgaged land, but only claim that it conferred a right for the creation in the future of an equitable lien thereon, which equitable lien would come into existence when, and only when, it should, upon default in the conditions of the mortgage, exercise its right to create and impose such lien. In one of their briefs they state their position as follows: "That right to create and impose a lien accrued to appellant as soon as it elected, under its option, to consider the entire debt to be due.   But the election did not create or impose a lien; the election did nothing more than bring into being the right to create and impose the equitable lien—which right for lack of better definition, may be inaccurately called an inchoate, potential, possible, or incipient lien; but there was really no lien at all.   The right to create or impose the equitable lien was a privilege only, and vastly different from the lien itself.   That right, unless in some appropriate way exerted or exercised,

would have remained a right or privilege only, which could never give rise to a lien.''

The insurance company's cross-complaint alleges that the mortgagor defaulted in payment of one of the mortgage notes, which became due on February 1, 1924; that in the month of August, 1924, it elected to declare the entire debt secured by the mortgage to be immediately due and payable and to take possession of the mortgaged premises in accordance with the terms of the mortgage, and in said month commenced an action against Skarda, the tenant in possession, to recover the premises from him, and at the time of the commencement of said action, filed in the proper office a notice of *lis pendens,* setting forth the names of the parties, the property affected by, and the purpose of, said action, and "subsequently, and on or about the twelfth day of August, 1924," served a duplicate of said *lis pendens* upon Skarda and the Farmers' Co-operative Elevator Company, and advised them that it was then the owner and entitled to the immediate possession of the crop of wheat growing on the land.

As indicated by what has heretofore been said, the plaintiff, Morton, had a lien upon the landlord's share of the crop of wheat growing upon the mortgaged premises. This mortgage was valid and binding upon every one except creditors of the mortgagor, Kidd, and the subsequent purchasers or encumbrancers, whether the same was filed or not. (*Isbell* v. *Slette,* 52 Mont. 156, 155 Pac. 503.)

Assuming that the rule laid down in *Union Central Life Ins.* [4, 5] *Co.* v. *Jensen,* 74 Mont. 70, 237 Pac. 518, could be held to apply to the facts in this case, which two members of the court do not concede, the insurance company, by virtue of the contract contained in its mortgage, had a right to impose or create a lien upon the same property as additional security for the payment of its mortgage debt. The actual and continued possession thereof by the insurance company was essential to the creation and maintenance of such lien as against the lien of plaintiff's chattel mortgage. Counsel for the insur-

ance company insist that, under the maxim, "that which ought to have been done is to be regarded as done in favor of him to whom and against him from whom performance is due" (sec. 8758, Rev. Codes 1921), when it commenced its possessory action against and made its demands upon Skarda, equity would regard the possession of the mortgaged premises as having been surrendered to it by him under the terms of the contract contained in its mortgage. Skarda is not a party to this action. We are not called upon to, and do not herein, determine anything in reference to the rights or liabilities which might exist between him and the insurance company. The maxim quoted could not in any event be held to affect the situation between the insurance company and Morton.

In 1 Pomeroy's Equity Jurisprudence, section 365, treating of the application of the above maxim, it is said: "Nor does the principle operate in favor of every person, no matter what may be his situation or relations, but only in favor of him who holds the equitable right to have the act performed, as against the one upon whom the duty of such performance has devolved." No duty devolved upon Morton which the insurance company had an equitable right to have performed, and no duty devolved upon Skarda or the insurance company which Morton had a right to have performed.

If it should be granted that, by the acts of the insurance company in commencing its suit against Skarda, and the service of copies of the notice of *lis pendens* and other notices as above recited, it gained possession of the mortgaged premises and the landlord's share of the crop of wheat growing thereon, it was only a constructive possession.

Counsel for the insurance company undertake to sustain the [6] contention that it maintained such possession as it obtained under the above-mentioned proceedings on the theory that by the provisions of sections 7886 and 7887, Revised Codes of 1921, Skarda became an involuntary or constructive trustee for it, and that his possession after such proceedings was the possession of the insurance company.

In *Largey* v. *Leggat,* 30 Mont. 148, 75 Pac. 950, *Eisenberg* v. *Goldsmith,* 42 Mont. 563, 113 Pac. 1127, *MacGinniss Realty Co.* v. *Hinderager,* 63 Mont. 172, 206 Pac. 436, *Word* v. *Moore,* 66 Mont. 550, 214 Pac. 79, and *Meagher* v. *Harrington,* 78 Mont. 457, 254 Pac. 432, this court has held that the basis of a constructive trust is fraud, either actual or constructive. The acts which constitute actual and constructive fraud are set out in sections 7480 and 7481, Revised Codes of 1921; but the acts of Skarda set out in the cross-complaint do not come within the provisions of either section, and the insurance company's contention that the possession of Skarda was its possession cannot be sustained.

The cross-complaint not showing that the insurance company [7] had obtained the actual possession of the landlord's share of the wheat crop, so as to create a lien thereon in its favor against the chattel mortgage of the plaintiff, Morton, it fails to show that it is entitled to the proceeds of the sale thereof in preference to him, and the court did not err in sustaining the demurrer thereto.

The judgment is affirmed. The opinion rendered on October 1, 1927, is withdrawn, and the present one substituted in its place. Remittitur will issue forthwith.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICE MATTHEWS concur.

JUSTICES MYERS and GALEN, dissenting:

We dissent. In this case we are of opinion that the decision of this court in the case of *Union Central Life Ins. Co.* v. *Jensen,* 74 Mont. 70, 237 Pac. 518, is controlling and conclusive as to the respective rights of the parties on this appeal. Here the mortgagee, upon the mortgagor's default, by virtue of the express terms of the contract (the mortgage), upon its election, became entitled to additional security for the debt, namely, immediate possession of the mortgaged premises and "to receive

[80 Mont. 593.]

the rents, issues, and profits thereof." At the time the mortgagee made demand for possession of the premises the crops were unsevered, and notwithstanding such demand, and legal proceedings to secure possession of the land, the tenant remained in possession until a month later, when he harvested the crops and removed them to the elevator, in utter disregard of the mortgagee's rights. In our opinion, the mortgagee pursued the only course open to it in the assertion and protection of its rights under the contract, and the tenant's wrongful detention of the landlord's share of the crop constituted him an involuntary trustee thereof for the use and benefit of the mortgagee. (Sec. 7887, Rev. Codes 1921.)

The conclusion reached by the majority disregards the proper application of the maxim: "That which ought to have been done is regarded as done, in favor of him to whom, and against him from whom, performance is due." Under its contract, the mortgagee should not be compelled to resort to force and arms in order to reduce to possession the landlord's share of the crop grown upon the land. There must be, and there is, a legal remedy. "A mortgage is a lien upon everything that would pass by a grant of the property" (sec. 8251, Rev. Codes 1921), and "the transfer of a thing transfers all its incidents unless expressly excepted" (Id., sec. 6867).

So long as a crop remains physically unsevered from the land, it "partakes of the nature of the realty as between the mortgagor and mortgagee" of the land, and "forms part of the latter's security for the payment of the debt, and all persons dealing with the mortgagor in respect to it whilst it remains actually attached to the freehold deal subject to all the rights of the mortgagee unimpaired and unaffected." (*Wootton* v. *White*, 90 Md. 64, 78 Am. St. Rep. 425, 44 Atl. 1026.)

"Crops of wheat and oats, while growing, are of necessity physically attached to land and accessory to its enjoyment, and for that reason and in that sense, and for certain purposes, are in a variety of circumstances incidental and accessory to land; for example, where the owner of land sells it, with right of

immediate possession in the purchaser, and without reservation of the emblements then standing on the land, and the purchaser takes possession before severance, title passes to the emblements as well as to the land; the reason, as it should seem, being that the grantor's intrusion by re-entry, and his cultivating and harvesting of the crops, would be both a breach of the covenant of quiet enjoyment and a trespass upon and disturbance of the purchaser's possession, and in that event 'the anomalous situation would be presented of the ownership of one of personal property upon the land of another without right in the owner to enter and take it.' (*Herron* v. *Herron*, 47 Ohio St. 544, 21 Am. St. Rep. 854, 9 L. R. A. 667, 25 N. E. 420.) Whatever the reason for the rule may be, the law on this subject is well settled." (*Power Merc. Co.* v. *Moore Merc. Co.*, 55 Mont. 406, 177 Pac. 406.)

In the case of *Isbell* v. *Slette*, 52 Mont. 156, 155 Pac. 503, this court correctly held that "a chattel mortgage upon crops thereafter to be planted cannot operate as an encumbrance upon the land where the crops are to be grown, and therefore, in the present instance, Geo. D. Isbell, after the execution of this mortgage and before any crops were planted, might have sold his homestead to a third party, and the purchaser could not have been held bound by the mortgage, and a lessee is in no worse situation. This is the rule followed by the great weight of authority, and commends itself to our judgment. (*Simmons* v. *Anderson*, 44 Minn. 487, 47 N. W. 52; *McMaster* v. *Emerson*, 109 Iowa, 284, 80 N. W. 389; *Reeves & Co.* v. *Sheets*, 16 Okl. 342, 82 Pac. 487; Jones on Chattel Mortgages, 5th ed., sec. 143a.)"

"A mortgagor, compelled to surrender the estate, is not, like a tenant at will, entitled to the emblements, though produced by the mortgagor's labor. The mortgagee may evict him without notice, and retain the emblements. A lessee holding under the mortgagor by a lease granted subsequently to the mortgage, and without the mortgagee's concurrence, has no greater rights than the mortgagor, and when evicted by the

paramount title of the mortgagee, as he may be without notice, he cannot retain the emblements.   A purchaser at a foreclosure sale is entitled to the crops growing at the time of the sale, and may maintain trespass against the mortgagor or his lessee for taking and carrying them away.''   (Jones on Mortgages, 2d ed., sec. 698.)

We are of opinion that the mortgagee's cross-complaint states a cause of action and that the judgment should be reversed.